Mark I. Labaton (SBN 159555)
MOTLEY RICE, LLP
1100 Glendon Avenue, 15th Floor
Los Angeles, CA 90024-3503
Telephone: (310) 500-3488
Facsimile: (310) 824-2870
Email: mlabaton@kreindler.com

Joseph A. Black
Daniel E. Cohen
James A. Moody (Of Counsel)
THE CULLEN LAW FIRM, PLLC
1101 30th Street, NW, Suite 300
Washington, DC 20007
Telephone: (202) 944-8600
Facsimile: (202) 944-8611
Email: jab@cullenlaw.com
 dec@cullenlaw.com
 moodyjim@aol.com

*Attorneys for Plaintiff Nyle Hooper*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES *ex rel.* NYLE HOOPER,<br><br>Plaintiff,<br><br>v.<br><br>LOCKHEED MARTIN CORPORATION,<br><br>Defendant. | Case No. CV 08-00561 DSF (FMOx)<br><br>**PLAINTIFF HOOPER'S REPLY DEFENDANT'S OPPOSITION TO MOTION TO EXTEND DISCOVERY AND TRIAL SCHEDULE**<br><br>Date: December 20, 2010<br>Time: 1:30 p.m.<br>Crtrm: 840<br>Judge: Hon. Dale S. Fischer |

This is a False Claims Act case against Lockheed in which Plaintiff Nyle Hooper, a whistleblower fired because of his efforts to correct or prevent fraud, is seeking to enforce the public's right to deter, and received damages and penalties for, false claims relating to missile launch software provided in violation of contract terms and specifications. Hooper moved on November 19 to extend the discovery schedule from January 10, 2010, through August 8, 2011 because Lockheed sought and received a contract extension through early summer 2011, giving it one more chance to deliver workable conforming software. Hooper demonstrated the "good cause" required under Fed. R. Civ. Proc. 16(b)(4) because (1) Lockheed has withheld crucial documents relating to software cost estimates; (2) the large volume of documents produced to date by Lockheed (2.7 million pages) has proved the original allegations but has required additional time for review and analysis and the preparation of expert reports; (3) the contract is ongoing and additional discovery is required both from Lockheed and third parties; and (4) damages cannot be completely ascertained until the contract is finished and the software is either accepted on the Ranges (damages equal to the increased costs caused by the false claims) or rejected (damages equal to the full cost of the rejected software). Lockheed opposed this motion on November 29, showing no prejudice, but claiming that this Court is constrained to grant further extensions and that Hooper has failed to exercise due diligence. Hooper's reply is set forth below.

### A. Intervening Circumstances Following the Previous Extension Order Justify this Additional Extension.

Unknown to Hooper when the Court last extended the schedule on February 19, 2010, the Government had granted Lockheed an additional extension of the RSAIIA contract to early summer 2011. Black Decl. ¶¶ 4, 5. (Doc 127-2) The original 1995 contract was originally scheduled to complete software development by 2002 and to terminate in 2005. Lockheed's current extension is the most recent

of numerous extensions in an effort to get the software complete and accepted by the Range. General Rego rejected key components of the software in February, 2009 because "the system is not mature enough in its development to resume [final testing,]" *Id.* ¶ 4, Government-speak for its failure to work according to contractual requirements.

Lockheed's claim that the stamped legend "no further continuances" somehow binds the Court is patently absurd. There is no limit in Rule 16(b)(4) as to the number of extensions. The only requirement is for "good cause" and Court approval. Circumstances bearing on the merits and defenses in a case sometimes change, as they did in this case.

The "good cause" necessary to justify any extension is obviously fact-bound and driven by the unique circumstances of each case. There is no talismanic rule, as Lockheed would argue, barring such extensions, if as here needed for the legitimate purposes of advancing the public rights protected by the FCA. The cases cited by Lockheed involve private litigation and contracts or transactions that, unlike the present stance of this case, had already been completed. Since this is a non-intervened case under the FCA, Hooper does not have the benefit of the full investigation and litigation resources of the government and must shoulder the litigation burden alone. While this is the plan of the FCA, in recognition that the government is overburdened and needs private help in deterring fraud and enforcing remedies for false claims, the fact that Hooper is vindicating public rights argues strongly in favor of granting this reasonable extension.

**B.    Lockheed Has Wrongly Withheld Crucial Documents.**

Count I of the TAC alleges that Lockheed underbid the original contract by altering crucial cost-driving parameters on its software cost estimation models. Once Lockheed obtained the contract, it began a series of practices to keep the contract despite grossly inflated costs, earn unjustified award fees, and avoid

termination for convenience by, e.g., including plagiarized freeware, submitting false estimates in connection with contract modifications and "replanning" efforts, and cutting corners in testing. Crucial to an analysis of this claim, and of Lockheed's defenses, is a reconstruction of the software cost estimates including both the "real" or "honest" estimates prepared internally and the false estimates submitted for government approval. Lockheed has produced some of the relevant documents but has withheld all of the model outputs, inserting "placeholders" in the discovery responses. *Id.* ¶ 13. Counsel has been diligently negotiating with Lockheed to obtain these documents and avoid a protracted discovery dispute, but to no avail. Lockheed originally offered to make these documents available on an "eyes only" basis at its facility in Santa Maria, but this would be of little use in litigation because it would be impossible to conduct expert analysis and present documents for/against summary judgment and at trial. Beginning in October, 2010, Lockheed added additional objections, including that it no longer had relevant files, no longer had the software to read these files, and no longer had software to run its input files against the then-existing modeling database. *Id.* Hooper believes these claims to all be without merit and simply a stalling tactic to prevent the disclosure of highly damaging documents. Hooper's preparation of a formal motion to compel has been interrupted by what Hooper believes to be a premature motion for summary judgment.

The importance of these documents to the case was made clear by a paper copy of an output from the SEER-SEM software cost estimation model software obtained from Mike Allen, a former Lockheed employee tasked along with Hooper to perform a "reality check" on the original contract estimates. That 73-page output document reveals that the productivity rate for the Flight Operations and Analysis (FOA) software product should have been much lower than rate provided in the original "best and final offer." Even though the FOA product was originally

scheduled to be delivered by 2002, it was not delivered until 2008, was rejected in February, 2009, and still does not work. Among other increments, this difference in cost is part of the damages sustained by the government on account of Lockheed's false promises. As explained in Hooper's original motion, Lockheed is required by regulation to keep all of these documents, and now must be forced through a motion to compel to disclose them in this litigation.

### C. Hooper Has Diligently Pursued this Case.

A "good cause" analysis should assess the diligence on both sides of litigation. Hooper set forth in the original motion the steps taken to pursue this case so far, including document requests and interrogatories, initial depositions, production of documents from Lockheed and third-parties including the Government, and the acquisition of expert testimony (relating to Lockheed's failure to follow the contractual standard for developing and testing software).

Lockheed cannot fault Hooper for beginning depositions in November, 2010. Depositions of fact witnesses in a complex case such as this typically begin after obtaining and analyzing documents, in this case totaling millions of pages. Indeed, it would have been arguably unreasonable to begin with early depositions and seek leave to take additional depositions, possibly of the same individuals.

Lockheed cannot take credit for "avoiding numerous disputes" relating to discovery. First, it is the obligation of both parties and counsel to avoid disputes and conduct litigation in an orderly and ethical manner. The "one minor" dispute to which Lockheed refers was in fact quite major, relating to the manner of production (specifically the usability of produced documents in the Summation, Hooper's litigation support software). The dispute relating to costs was resolved in Hooper's favor but this delayed the production of 2.3 million pages of documents until December 2009. Moreover, Lockheed ignores the extra time required for review

and analysis due to its "rolling" production, which was not completed until March 2010. *Id.* ¶ 9.

Lockheed's contention in an effort to defeat the extension that Hooper "contemplated this action fourteen years ago" is simply absurd. He was employed on this contract from 1996 to 2002, but as set forth in the discharge claim, Count 5 in the FAC, he worked tirelessly to investigate the fraud and take all appropriate steps internally to correct it. He filed this action only after he was terminated for his internal whistle-blowing and after conducting additional investigations.

He could have, and perhaps in retrospect should have, waited until the end of the contract before filing this action. FCA cases are normally filed after the completion of the underlying contract or transaction. One of the consequences of this "early" filing is that the software is still under development to fix problems, documents continue to be generated, freeware continues to be disclosed, safety studies and testing remain underway, third-party technical and critical review continues, and the final acceptance or rejection of key software products has not occurred. Thus it is simply premature to end discovery, and the production and analysis of documents, until sufficient time after the contract has concluded, if only to provide an accurate assessment of damages. Hooper cannot be faulted, for purposes of now seeking an extension, for his diligence in bringing Lockheed's wrongdoing to the attention of relevant authorities.

**Conclusion.**

Hooper's request for a reasonable extension of time to complete discovery should be granted for the reasons advanced in the original motion and in this reply.

| | |
|---|---|
| Dated: December 6, 2010 | MOTLY RICE, LLP |
| | By: /S/ Mark I. Labaton<br>MARK I. LABATON (SBN 159555) |
| | Attorney for Relator<br>NYLE J. HOOPER |
| | THE CULLEN LAW FIRM, PLLC |
| | By: /S/ Joseph A. Black<br>JOSEPH A. BLACK<br>(*admitted pro hac*)<br>Attorney for Relator<br>NYLE J. HOOPER |