1  TONY WEST
   Assistant Attorney General
2  JOYCE R. BRANDA
   PATRICIA DAVIS
3  JOHN A. KOLAR (DC Bar No. 292953, john.kolar@usdoj.gov)
        U.S. Department of Justice
4       P.O. Box 261
        Ben Franklin Station
5       Washington, D.C.  20044
        Telephone:  (202) 305-9301
6  ANDRÉ BIROTTE JR.
7  United States Attorney
   KENT KAWAKAMI (Cal. Bar No. 149803)
8  Assistant United States Attorney
9       Room 7516, Federal Building
        300 North Los Angeles Street
10      Los Angeles, California  90012
11      Telephone: (213) 894-4858
        Facsimile: (213) 894-2380
12      kent.kawakami@usdoj.gov
13 Attorneys for the United States of America

14

15              UNITED STATES DISTRICT COURT

16             CENTRAL DISTRICT OF CALIFORNIA

17                   WESTERN DIVISION

18

19                              )   NO. CV 08-00561-DSF (FMOx)
                                )
20 UNITED STATES OF AMERICA,    )   **UNITED STATES' *AMICUS CURIAE***
21 ex rel. NYLE J. HOOPER,      )   **BRIEF IN RESPONSE TO**
                                )   **LOCKHEED MARTIN**
22              Plaintiffs,      )   **CORPORATION'S MOTION FOR**
                                )   **SUMMARY JUDGMENT**
23                              )
24              v.               )   Date:     January 10, 2011
                                )   Time:     1:30 p.m.
25 LOCKHEED MARTIN              )   Crtrm:    840
   CORPORATION,                 )   Judge:    Hon. Dale S. Fischer
26                              )
27              Defendant.       )
   _____ )
28

# TABLE OF CONTENTS

A.     The False Claims Act–Overview  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

B.     Specific Issues Raised in LMC's Memorandum . . . . . . . . . . . . . . . . . . . . . . . . . 3

    1.     Estimates May Be Actionable Under The FCA. . . . . . . . . . . . . . . . . . . . . 3

    2.     A Low Bid May Give Rise to FCA Liability If It Is False or Fraudulent.  9

    3.     Materiality Turns on Whether the Falsity Has the Potential to Affect the Government, and Does Not Require or Entail Proof of Reliance or Causation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

    4.     Government Knowledge Is Not A Legal Defense To a Defendant's Liability Under the FCA.  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

# TABLE OF AUTHORITIES

**Cases:**                                                                 **Pages**:

*Ab-Tech Constr., Inc. v. United States*,
    31 Fed. Cl. 429 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 13

*Graham County Soil & Water Conservation Dist. v. United States ex rel. Wilson*,
    545 U.S. 409 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Kreindler & Kreindler v. United Technologies Corp.*,
    985 F.2d 1148 (2d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22

*McKnight Construction, Co., Inc. v. Dep't of Defense*,
    85 F.3d 565 (11 th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Neder v. United States*,
    527 U.S. 1 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Shaw v. AAA Engineering & Drafting, Inc.*,
    213 F.3d 519 (10th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22

*UMC Electronics Co. v. United States*,
    43 Fed. Cl. 776 (Fed. Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*United States ex rel. A+ Homecare, Inc. v. Medshares Mgmt. Group, Inc.*,
    400 F.3d 428 (6th Cir.), *cert. denied*, 126 S. Ct. 797 (2005) (citing
    *Harrison II* at 916-17) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 21

*United States ex rel. Becker v. Westinghouse Savannah River Co.*,
    303 F.3d 284 (4th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*United States ex rel. Bettis v. Odebrecht*,
    297 F.Supp.2d 272 (D.D.C. 2005), *aff'd,* 393 F.3d 1321 (D.C. Cir. 2004) . . 12

*United States ex rel. Burlbaw v. Orenduff*,
    548 F.3d 931 (10 Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 23

*United States ex rel. Butler v. Hughes Helicoptors, Inc.*,
   71 F.3d 321 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*United States ex rel. Costner v. URS Consultants, Inc.*,
   317 F.3d 883 (8th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*United States ex rel. Davis v. Lockheed Martin Corp.*,
   2010 WL 4607411 (N.D.Tex. November 15, 2010) . . . . . . . . . . . . . . . . . . . 19

*United States ex rel. Durcholz v. FKW, Inc.*,
   189 F.3d 542 (7th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22

*United States ex rel. Grubbs v. Kanneganti*,
   565 F.3d 180 (5th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 20, 21

*United States ex rel. Hagood v. Sonoma County Water Agency*,
   929 F.2d 1416 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 20, 21, 22

*United States ex rel. Harrison v. Westinghouse Savannah River Co.*,
   (*Harrison I*), 176 F.3d 776 (4th Cir. 1999) . . . . . . . . . . . . . . . . . . . . 4-5, 9, 18

*United States ex rel. Harrison v. Westinghouse Savannah River Co.*
   (*Harrison II*), 352 F.3d 908 (4th Cir. 2003) . . . . . . . . . . . . . . 12,18, 19, 20, 21

*United States ex rel. Jordan v. Northrop Grumman Corp.*,
   2002 WL 34251040 (C.D. Cal. Aug. 5, 2002) . . . . . . . . . . . . . . . . . . . . . . . 23

*United States ex rel. Lemmon v. Envirocare of Utah, Inc.*,
   614 F.3d 1163 (10th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*United States ex rel. Longhi v. Lithium Power Techs., Inc.*,
   575 F.3d 458 (5th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

*United States ex rel. Loughren v. Unum Group*,
613 F.3d 300 (1st Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*United States ex rel. Marcus v. Hess*,
   317 U.S. 537 (1943) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States ex rel. Pogue v. American Healthcorp, Inc.*,

iii

914 F. Supp. 1507 (M.D. Tenn. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States ex rel. Rudd v. Schimmels (In re Schimmels)*,
  85 F.3d 416 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*United States ex rel. Schwedt v. Planning Research Corp.*,
  59 F.3d 196 (D.C. Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 14

*United States v. Bourseau*,
  531 F.3d 1159 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 15, 16

*United States v. Bramblett*,
  348 U.S. 503 (1955), *overruled on other grounds, Hubbard v. United States*,
  514 U.S. 695 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*United States v. Hartness*,
  845 F.2d 158 (8th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Incorporated Village of Island Park*,
  888 F. Supp. 419 (E.D.N.Y. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Mackby*,
  261 F.3d 821 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*United States v. Neifert-White Co.*,
  390 U.S. 228 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 11

*United States v. Newport News Shipbuilding, Inc.*,
  276 F. Supp. 2d 539 (E.D. Va. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*United States v. Rogan*,
  517 F.3d 449 (7th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 19

*United States v. Shah*,
  44 F.3d 285 (5th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Southland Management Corp.*,
  288 F.3d 665 (5th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*United States v. Southland Mgmt. Corp.*,
  326 F.3d 669 (5th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*United States v. United Technologies Corp.*,
    255 F.Supp.2d 779 (S.D. Ohio 2003, *aff'd in part, rev'd in part on other*
    *grounds,* 2010 U.S. App. LEXIS 23710 (6th Cir. 2010) . . . . . . . . . . . . . . 6, 19

*United States v. White*,
    765 F.2d 1469 (11th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

*Varljen v. Cleveland Gear Co.*,
    250 F.3d 426 (6th Cir.2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21

*Wang v. FMC Corp.*,
    975 F.2d 1412 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

**Statutes:**

Criminal False Claims Act, 18 U.S.C. § 287 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

False Claims Act ("FCA"):

    31 U.S.C. § 3729 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 6-7
    31 U.S.C. § 3729(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    31 U.S.C. § 3729(a)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    31 U.S.C. § 3729(a)(1)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

False Statements Statute, 18 U.S.C. § 1001 . . . . . . . . . . . . . . . . . . . . . . . . . . 6-7, 8

Fraud Enforcement and Recovery Act of 2009, Pub. Law 111-21 (2009) . . . . . . 2

**Congressional Reports:**

S. Rep. 111-10, 111th Cong., 1st Sess. (March 23, 2007) . . . . . . . . . . . . . . . . . . 2

**Regulations:**

    48 C.F.R. 14.404-2(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

**Miscellaneous:**

*Prosser & Keeton on the Law of Torts* § 100, at 760 (5th ed.1984) . . . . . . . . . . . 5

The United States of America, by its undersigned attorneys, respectfully submits this *amicus curiae* brief in response to several legal arguments made by defendant Lockheed Martin Corporation ("LMC") in Motion for Summary Judgment, or in the Alternative, Partial Summary Judgment of Claims, and its Memorandum Of Points And Authorities In Support Thereof, dated November 22, 2010 ("LMC's Memorandum").[1]

## A.    The False Claims Act–Overview

"The FCA prohibits any person from making false or fraudulent claims for payment to the United States." *Graham County Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 545 U.S. 409, 411 (2005) (citation omitted).  The Supreme Court has instructed: "In the various contexts in which questions of the proper construction of the [False Claims] Act have been presented, the Court has consistently refused to accept a rigid, restrictive reading." *United States v. Neifert-White Co.*, 390 U.S. 228, 232 (1968).  "This remedial statute reaches beyond 'claims' which might be legally enforced, to all fraudulent attempts to cause the Government to pay out sums of money." *Id.* at 233.  FCA liability may be imposed upon any person who "knowingly presents, or causes to be presented, to an officer or employee of the United States Government . . . a false or fraudulent claim for payment or approval," 31 U.S.C. § 3729(a)(1)(A); and any person who "knowingly makes, uses, or causes to be

---

[1]  The United States does not take any position with respect to the merits of relator's claims, the merits of LMC's defenses to those claims, or whether LMC's motion for summary judgment should be granted or not.

made or used, a false record or statement material to a false or fraudulent claim, § 3729(a)(1)(B).[2]

To establish a cause of action under § 3729(a)(1), the United States must prove (1) a false or fraudulent claim (2) that was material to the decision-making process (3) which defendant presented, or caused to be presented, to the United States for payment or approval (4) with knowledge that the claim was false or fraudulent. *See United States v. Bourseau*, 531 F.3d 1159, 1171 (9th Cir. 2008); *United States v. Mackby*, 261 F.3d 821, 826 (9th Cir. 2001). Similarly, to prove a violation under § 3729(a)(1)(B), the United States must show that defendants knowingly made, used, or

---

[2] On May 20, 2009, the Fraud Enforcement and Recovery Act of 2009 ("FERA") was signed into law and made certain changes to the FCA, including modifying 31 U.S.C. § 3729(a)(2) and renumbering it as 31 U.S.C. § 3729(a)(1)(B). With the exception of section (a)(1)(B), this motion cites to the FCA as codified at the time of defendants' violations thereof. Prior to the FERA amendments, 31 U.S.C. § 3729(a)(2) provided FCA liability for any person who "knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the government." The new statute provides that its amendments to the FCA are, in general, prospective only in their application. However, the change to 31 U.S.C. § 3729(a)(2) was expressly made applicable to pre-enactment conduct. The new statute states that those changes "shall take effect as if enacted on June 7, 2008, and apply to all claims under the False Claims Act (31 U.S.C. 3729 et seq.) that are pending on or after that date." Pub. L. 111-21, §4(f)(1). The cited date – June 7, 2008 – is keyed to the June 9, 2008 date of the Supreme Court's decision in *Allison Engine Co. v. U.S. ex rel. Sanders*, 128 S. Ct. 2123 (2008). The legislative history explains that one of the main purposes of the 2009 Act was to overrule *Allison Engine*, which, in the view of Congress, construed the FCA in an overly narrow and stringent way that was contrary to the statute and Congressional intent. *See* S. Rep. 111-10, 111th Cong., 1st Sess. 10-13 (Mar. 23, 2009).

caused to be made or used, a false record or statement material to a false or fraudulent claim.

**B.    Specific Issues Raised in LMC's Memorandum**

LMC's Memorandum appears to misstate the law with regard to the FCA in several respects. The United States addresses the following points to correct or clarify incorrect statements of the law in LMC's Memorandum: (1) contrary to LMC's assertion, estimates may be actionable under the False Claims Act ("FCA"), 31 U.S.C. §§ 3729 *et seq.*, if the other elements of the FCA are satisfied in a particular case; (2) a low bid may give rise to FCA liability if it is false or fraudulent; (3) materiality is determined by whether a false statement or claim merely has a potential for affecting the government's decision, and proof of materiality does not require or entail proof of reliance or causation; and (4) government knowledge does not negate liability under the FCA although it does bear on the question of the defendant's *scienter*, but only if the defendant proves that it made a full disclosure to the government of all relevant information and obtained the government's approval for the conduct.

**1.    Estimates May Be Actionable Under The FCA.**

LMC argues that estimates may never give rise to liability under the FCA.  For example, in LMC's Memorandum at 1, it states: "[A]s a matter of law, estimates cannot form the basis of a FCA cause of action."  LMC characterizes estimates as "judgmental" and asserts–without citing any decision in support of the proposition--

that "[t]he law draws a sharp distinction between facts and judgments, and exempts contractors from administrative and civil liability for statements that are judgmental." Specifically, LMC argues that estimates of productivity and "estimates of what costs might be [that do] not reflect the actual cost of development" cannot constitute false claims or false statements within the ambit of the FCA.  LMC's Memorandum at 16-17.

This is incorrect.  It is well-established that estimates, opinions, and even promises of future performance can form the basis for FCA liability where they are given with knowledge of their falsity.  One of the leading decisions is *United States ex rel. Harrison v. Westinghouse Savannah River Co.* (*Harrison I*), 176 F.3d 776, 792 (4th Cir. 1999).  A relator alleged that the defendant Westinghouse Savannah River Co. ("WSRC") submitted a false "make or buy" recommendation to the Department of Energy ("DOE").  WSRC was DOE's prime contractor operating its Savannah River nuclear facility.  WSRC sought DOE approval of its decision to subcontract certain training work to an outside subcontractor, rather than performing the work in-house.

The relator alleged that the recommendation contained false statements that (a) the project was "short term" when WSRC knew the project would take several years; (b) that the training was a one-time event, when WSRC knew the project would be on–going for years; (c) that there was no need to hire permanent staff to fulfill the training requirement, when WSRC knew that the project would require qualified

trainers for a decade or more; (d) that certain costs would be zero, when it knew the subcontractor would have to acquire computers to perform the subcontract; and (e) that the subcontract would be issued on a firm-fixed price basis for a total cost of $2.75 million, when WSRC intended to issue the subcontract on a cost-plus-fixed-fee basis for substantially more than $2.75 million.  176 F.3d at 781.

The Fourth Circuit reversed the district court's dismissal of this claim under Rule 12(b)(6).  Among other things, the court rejected WSRC's argument that WSRC's statements could not create FCA liability as they were only estimates or expressions of opinion.  The court explained, *quoting Prosser & Keeton on the Law of Torts* § 100, at 760 (5th ed.1984):

> [A]n opinion or estimate carries with it "an implied assertion, not only that the speaker knows no facts which would preclude such an opinion, but that he does know facts which justify it."

Other courts have followed *Harrison I* on this point in FCA cases.  In *United States v. Loughren v. Unum Group*, 613 F.3d 300, 310 (1st Cir. 2010), the court held that statements by Social Security Disability Insurance applicants that they were unable to work as of a certain date could be materially false statements within the meaning of the FCA, and rejected the argument that such statements were merely "legal conclusions . . . not a factual representation" likely to influence the Social Security Administration's decision-making.  The court stated: "[T]he fact that an allegedly

false statement constitutes the speaker's opinion does not disqualify it from forming the basis of FCA liability."

In *United States v. United Technologies Corp.*, 255 F.Supp.2d 779, 782 (S.D. Ohio 2003, *aff'd in part, rev'd in part on other grounds*, 2010 U.S. App. LEXIS 23710 (6th Cir. November 18, 2010), the court held that a contractor's "best estimates" of its costs to perform a contract could be a predicate for FCA liability where the contractor "knew of no facts to substantiate its 'best estimate' and . . . actually knew facts that would preclude such an opinion."   The court expressly rejected the argument that price estimates could not be false because estimates are inherently subjective, and that the term "best estimate" could not be false because the term was "vague" and "ambiguous." *See also UMC Electronics Co. v. United States*, 43 Fed. Cl. 776, 817 (Fed. Cir. 1999) (affirming a contractor's liability under the FCA for claims based on estimates that included costs that the contractor did not actually expect to incur).

Indeed, courts long have held that false estimates may subject a defendant to **criminal** liability under the False Statements Statute, 18 U.S.C. § 1001,[3] and the

---

[3]   We cite decisions involving 18 U.S.C. § 1001 inasmuch as a holding that an estimate may be a "statement" for purposes of § 1001 supports the conclusion, *a fortiori*, that an estimate is a "statement" for purposes of civil liability pursuant to 31 U.S.C. § 3729.  The criminal False Statements Statute, § 1001, the criminal False Claims Act, 18 U.S.C. § 287, and the Civil False Claims Act all derive from the Act of March 2, 1863, 12 Stat. 696, "An Act to prevent and punish Frauds upon the Government of the United States," the Civil War-era False Claims Act.  That original statute imposed both criminal penalties and civil liability in the form of

(continued...)

Criminal False Claims Act, 18 U.S.C. § 287.  For example, in *United States v. White*, 765 F.2d 1469 (11ᵗʰ Cir. 1985), defendants were convicted under these statutes for submitting false requests for equitable adjustments in connection with government construction contracts.  The claims for equitable adjustments were characterized as "cost proposals" in cover letters to the government.  The claims were supported by "Detailed Cost Breakdowns" in documents labeled "Estimated Summary for Change Orders."  The government proved at trial that the proposals were inflated over and above defendants' actual cost experience for the relevant categories of labor and material.

---

³(...continued)
double damages for false claims and false statements.  In a 1934 revision of the statute, Congress made no change in the false claims portion, but expanded the false statements provision to cover non-monetary frauds against the United States by including within the law's prohibition false statements that were not necessarily related to false claims, but were "in any matter within the jurisdiction of any department or agency of the United States."  A 1948 revision separated the criminal false claim section and the false statement provision into two separate sections of the United States Code, *i.e.*, 18 U.S.C. § 287 (false claims) and 18 U.S.C. § 1001.  *See United States v. Bramblett*, 348 U.S. 503, 505-507 (1955) (tracing this legislative evolution), *overruled on other grounds*, *Hubbard v. United States*, 514 U.S. 695 (1995).  Thus, even though Congress has expanded the subject matters as to which false statements may trigger criminal liability under 18 U.S.C. § 1001 to include non-monetary aspects of governance, the question of whether a particular type of representation–*i.e.*, for purposes of this case a representation about an estimate–qualifies as a "statement" for purposes of this criminal provision is identical to the issue of whether such a representation may constitute a "statement" for purposes of the Civil False Claims Act.

The defendants' main contention on appeal was that their submissions were merely estimates of costs submitted as an opening position in a process of negotiations over costs:

> The appellants contend that the disparity shown between actual hours and the proposals submitted were in all instances only estimates, represented to NASA to be only estimates, and accepted and negotiated by NASA as only estimates. Consequently, appellants argue that the key element of § 1001 has not been met, the knowing submission of a false statement, because the proposals submitted were estimates subject to negotiation and therefore, regardless of the actual hours later shown, the proposals submitted by being labeled estimates negated any possible finding of falsity.

765 F.2d at 1478. The court affirmed the convictions, stating: "It is no defense that NASA was willing to negotiate on these cost proposals and viewed them primarily as estimates." *Id.* at 1482.[4]

_____

[4] *See also United States v. Hartness*, 845 F.2d 158, 160 (8th Cir. 1988) (affirming conviction of home builder pursuant to § 1001 where he knew applicant for a government low interest mortgage worked only part-time, but he projected her income on the application as though she worked full-time; rejecting defendant's argument that it was "legally impossible to falsify a projection of future events."); *United States v. Shah*, 44 F.3d 285, 289-90 (5th Cir. 1995), (upholding a conviction under § 1001 based upon defendant's promise in his bid not to disclose price information to a competing bidder where the government established that at the time he made that promise he did not intend to keep it).

If false estimates can be the basis for a criminal violation, clearly they can be the basis for a violation of the FCA.[5]

## 2. A Low Bid May Give Rise to FCA Liability If It Is False or Fraudulent.

LMC also incorrectly asserts that "as a matter of law, [] an intentionally low bid ('underbid') cannot for the basis of a false claim in the absence of actual mischarging of incurred costs." LMC's Memorandum at 14-15. The case law makes it clear that an intentional low bid in fact may trigger FCA liability under the so-called "fraud in the inducement" theory.

The courts have consistently held that a defendant violates the FCA when it obtains a government contract, or grant or other benefit through fraud in the inducement, and subsequently submits claims and invoices for payment under such a fraudulently-obtained contract, even if the claims or invoices themselves are not false as to amount and otherwise do not contain a false representation. *See Harrison I*, 176 F.3d at 787 ("In these cases, courts, including the Supreme Court, found False Claims Act liability for each claim submitted to the government under a contract, when the contract or extension of government benefit was obtained originally through false statements or fraudulent conduct). The court in *Harrison I* cited as a prime example

---

[5]   Of course, to prevail under the FCA, a plaintiff must show that the estimate was knowingly false, and the fact that it was an estimate may be relevant to this issue. But where an estimate, judgment, or opinion is shown to be knowingly false, it is no less actionable than a false misrepresentation of fact, and LMC's contention to the contrary is without merit.

the Supreme Court's decision in *United States ex rel. Marcus v. Hess*, 317 U.S. 537

(1943).

In *Hess*, the Court held that every claim submitted under a contract obtained by

means of the collusive bidding constituted an actionable claim in violation of the

FCA:

> The fraud did not spend itself with the execution of the
> contract.  Its taint entered into every swollen estimate which
> was the basic cause for payment of every dollar paid by the
> [government] . . . The initial fraudulent action and every step
> thereafter taken, pressed ever to the ultimate goal–payment
> of government money to persons who had caused it to be
> defrauded.

317 U.S. at 543-44.  The Court further stated that the FCA's "purpose [was] to reach

any person who knowingly assisted in causing the government to pay claims which

were grounded in fraud . . . " *Id.*

Based on *Hess*, courts have found false claims in a variety of contexts where

contracts were obtained fraudulently from the government through means other than

inflated pricing.  *See, e.g.*, *United States ex rel. Hagood v. Sonoma County Water

Agency*, 929 F.2d 1416, 1420-21 (9th Cir. 1991) (allegedly false cost allocations

leading to the issuance of a government contract could give rise to liability under the

FCA; the court commented: "That a contract based on false information is a species of

false claim is undisputed."); *United States ex rel. Pogue v. American Healthcorp, Inc.*,

914 F. Supp. 1507 (M.D. Tenn. 1996) (relator stated actionable FCA claim in alleging

that Medicare reimbursement requests submitted by doctors allegedly violated federal anti-kickback statute, even if medical services were necessary and actually rendered)*;* *United States v. Incorporated Village of Island Park*, 888 F. Supp. 419, 439-40 (E.D.N.Y. 1995) (holding, in case where defendant violated anti-discrimination rules after accepting federal housing program money, that FCA extends liability to a 'fraudulent course of conduct' that causes the government to pay out money); *Ab-Tech Constr., Inc. v. United States*, 31 Fed. Cl. 429, 433-34 (1994) (FCA liability attached where government was 'duped by [contractor's] active concealment of a fact vital to the integrity of' the federal Small Business Administration program under which the contract was awarded).  In other words, a contractor's fraudulent act taints the formation of a government contract, the claims thereafter submitted violate the FCA.

The above-cited decisions compel the same conclusion where the fraudulent conduct is a deflated bid.  The statutory language of the FCA does not distinguish between high fraudulent bids, low fraudulent bids, or bids inconsistent with federal rules. The FCA speaks only of conduct that is 'false' or 'fraudulent' -- terms broad enough to encompass deflated, as well as inflated, bids in appropriate circumstances. *Cf. United States v. Neifert-White*, 390 U.S. 228, 233 (1968) ("the objective of Congress in enacting the False Claims Act 'was broadly to protect the funds and property of the Government from fraudulent claims, regardless of the form or function of the government instrumentality upon which such claims were made' and that '[b]y

any ordinary standard the language of the Act is certainly comprehensive enough to achieve this goal'") (citation omitted).  Accordingly, a deflated bid should be treated just like an inflated one, so that the former, like the latter, can be actionable under the statute even though none of the payment requests is inconsistent with the original bid.  The FCA violation is completed when the bidder makes a fraudulent low bid, wins the contract, and submits a request for payment under the contract even if the specific request is not an overcharge in any way.  *See United States ex rel. Schwedt v. Planning Research Corp.*, 59 F.3d 196, 199 (D.C. Cir. 1995).[6]

The government has an interest in preventing fraudulent underbids.  There are at least two interrelated reasons why the government would consider rejecting a low bid if it knew that it was fraudulent, even where the FCA could eventually protect the government from requests for adjustments.  First, the government has a clear interest in the integrity of the bidding process and in preventing bidders from gaming the system.  The courts have recognized the importance of this point irrespective of whether the government might suffer damages or be able to recoup its losses.  *See, e.g., United States ex rel. Harrison v. Westinghouse Savannah River Co.* (*Harrison II*),

---

[6] LMC's citation of the decision in *United States ex rel. Bettis v. Odebrecht*, 297 F.Supp.2d 272 (D.D.C. 2005) is misleading.  LMC cites this district court decision as "affirmed" by the Court of Appeals for the District of Columbia Circuit.  LMC's Memorandum at 15.  Although the D.C. Circuit affirmed the judgment of the district court on other grounds, the appeals court expressly declined to affirm the holding by the district court upon which LMC relies, *i.e.*, that an underbid may never form the basis for FCA liability.  *United States ex rel. Bettis v. Oldebrecht*, 393 F.3d 1321, 1327 (D.C. Cir. 2004), *aff'g* 297 F.Supp.2d 272 *on other grounds*.

352 F.3d 908, 913 (4th Cir. 2003) (noting that district court had determined "that the false certification negatively affected the integrity of the bidding process"); *Ab-Tech Constr., Inc. v. United States*, 31 Fed. Cl. at 433-34 (FCA liability attached where government was "duped by [contractor's] active concealment of a fact vital to the integrity of" the federal Small Business Administration program under which the contract was awarded).[7]

Second, a low bid--especially one that is significantly lower than the next lowest bid and substantially below the agency's own cost estimate--carries a perceived risk of the bidder's default if it wins the contract. Thus, the government would be concerned with the prospect of a job only partially completed, the need then to rebid the job in order to complete it, and the attendant delays and additional expense caused by the default. As a general matter, such a concern constitutes a sufficient reason for the government to reject a bid. *See, e.g.*, 48 C.F.R. 14.404-2(f) ("Any bid may be rejected if the contracting officer determines in writing that it is unreasonable as to price.

---

[7] *See also McKnight Construction, Co., Inc. v. Dep't of Defense*, 85 F.3d 565,570 (11 th Cir. 1996) (Army awarded contract to second lowest bidder because of perceived error in low-bidder's bid and rejected low-bidder's request to "correct" its bid; court upheld Army's refusal to allow post-bid correction because Army has a "strong interest in protecting the integrity of the bidding process"; a different conclusion would allow bidders to game the system by submitting a bid, waiting to see if it is accepted, and then seeking "correction" if the bid fails).

Unreasonableness of price includes not only the total price of the bid, but the prices for individual line items as well.").[8]

In summary, the language of the FCA does not distinguish between fraudulent overbids and fraudulent underbids and does not otherwise exempt the latter from redress under the statute.  The case law demonstrates that any time a government contract is induced through fraudulent conduct of any kind, the claims submitted under that contract constitute fraudulent claims violative of the FCA.  Further, the government has important programmatic interests in protecting against fraudulent underbids, for which the FCA is an appropriate remedy.  The court therefore should reject LMC's contention that an intentionally low bid can never support liability under the FCA.

### 3. Materiality Turns on Whether the Falsity Has the Potential to Affect the Government, and Does Not Require or Entail Proof of Reliance or Causation.

LMC argues that liability under the FCA requires "proof (1) that the alleged false statement or claim was essential to the government's funding decision; (2) that the government specifically relied on the falsity; or (3) that the falsity caused the government to pay out sums it otherwise would not have paid."  LMC's Memorandum

---

[8] It may well be that, absent any subsequent request for a contract modification or a default, which will often accompany a fraudulent underbid, the government may have no damages, but the absence of damages does not equate to the absence of liability.  *See Schwedt v. Planning Research Corp.*, and cases cited at page 19 below.

at 13.  LMC does not cite any case law to support this misstatement of the law.[9]  There is abundant case law (including governing Ninth Circuit precedent) establishing the contrary, that the government need not prove reliance or causation to establish a defendant's **liability** under the FCA, and that the proper test of whether a false claim or false statement is material under the FCA is an objective one: whether it has a potential of impacting the agency's decision-making process, not a subjective one–whether it actually affected a decision.

A materially false statement is one that "has a natural tendency to influence, or is capable of influencing, the decision of the decision-making body to which it was addressed."  *Bourseau*, 531 F.3d at 1171, *citing Neder v. United States*, 527 U.S. 1, 16 (1999).  The materiality of false and fraudulent statements is determined by an objective standard.  *United States v. Rogan*, 517 F.3d 449, 452 (7th Cir. 2008).  That is so because "[t]he United States is entitled to guard the public fisc against schemes designed to take advantage of overworked, harried, or inattentive disbursing officers; the False Claims Act does this by insisting that persons who send bills to the Treasury tell the truth."  *Id*.

The materiality standard applied by the majority of courts in connection with the FCA–the "natural tendency" test--derives from the Supreme Court's decision in *Neder*

---

[9]  LMC cites only a treatise on FCA law, John Boese, *Civil False Claims and Qui Tam Actions*.  Mr. Boese is a partner in the FCA defense firm of Fried, Frank in Washington, D.C., see  http://www.friedfrank.com/index.cfm?pageID=42&itemID=156.

*v. United States*, 527 U.S. 1, 16 (1999): "[i]n general, a false statement is material if it has a natural tendency to influence, or is capable of influencing, the decision of the decision making body to which it was addressed" (brackets and internal quotation marks omitted).  This standard "'focuses on the potential effect of the false statement when it is made, not on the actual effect of the false statement when it is discovered.'" *United States ex rel. A+ Homecare, Inc. v. Medshares Mgmt. Group, Inc.*, 400 F.3d 428 (6th Cir.), *cert. denied*, 126 S. Ct. 797 (2005) (citing *Harrison II* at 916-17).

In *Bourseau*, the Ninth Circuit expressly adopted the "natural tendency test" for materiality.  *Bourseau*, 531 F.3d at 1171**.**  In doing so, the *Bourseau* court expressly rejected the Eighth Circuit's so-called "outcome materiality" standard, *see Bourseau* at 1171 ("We agree with the Fourth and Sixth Circuits that the natural tendency test is the appropriate measure for materiality because it is more consistent with the plain meaning of the FCA").  As explained by the Fifth Circuit in *United States v. Southland Management Corp.*, 288 F.3d 665 (5th Cir. 2002),[10] the "outcome materiality" test requires "that a falsehood or misrepresentation must affect the government's ultimate decision whether to remit funds to the claimant in order to be 'material.'" An "outcome materiality" test, however, is essentially tantamount to requiring reliance and causation to establish FCA liability, requirements which numerous courts have

_____

[10]  In *Southland Management Corp*., the court declined to adopt the "outcome materiality standard, 288 F.3d at 678.  As noted in the text below, the Fifth Circuit settled the question in *United States ex rel. Longhi v. Lithium Power Techs., Inc.*, 575 F.3d 458 (5th Cir. 2009), adopting the natural tendency criterion.

rejected as prerequisites for liability (see below).  Indeed, the standard

proposed–incorrectly--by LMC at page 13 of its Memorandum essentially is the

"outcome materiality" test.

The Fifth Circuit recently jointed the majority of courts in adopting the "natural

tendency" test, and rejecting the "outcome materiality" standard, in *United States ex*

*rel. Longhi v. Lithium Power Techs., Inc*., 575 F.3d 458 (5th Cir. 2009):

> The Government . . . argues that the FCA requires proof only
> that the defendant's false statements "could have" influenced
> the government's payment decision or had the "potential" to
> influence the government's decision, not that the false
> statements actually did so.  We agree.  The outcome and
> claim materiality definitions unnecessarily narrow the
> "natural tendency to influence or capable of influencing"
> test, which is unambiguous and easily applied. . . . Thus, the
> "natural tendency to influence or capable of influencing" test
> requires only that the false or fraudulent statements either (1)
> make the government prone to a particular impression,
> thereby producing some sort of effect, or (2) have the ability
> to effect the government's actions, even if this is a result of
> indirect or intangible actions on the part of the Defendants.
> All that is required under the test for materiality, therefore, is
> that the false or fraudulent statements have the potential to
> influence the government's decisions.

575 F.3d at 469-70.[11]

The fact that, under the objective, "natural tendency" test a false statement or

claim need only carry a potential for affecting the government's decision for liability

to ensue, logically and necessarily implies that reliance and causation are unnecessary

---

[11]   The Fifth Circuit relied on the new definition of materiality in FERA to conclude that that was the proper definition of materiality even prior to FERA.

to establish FCA liability.  Reliance is subjective and focuses on what was actually in the mind of a government decision-maker when he or she approved a claim, and causation similarly asks whether the government subjectively acted upon the false information by deciding to pay the claim based thereupon.  Neither is an element of FCA liability (although they may be required to prove the government was damaged by the false statement or false claim).

In *Harrison II*, the court explained the mutual inconsistency between the correct, "natural tendency" test and the application of a reliance/causation element. The court followed its earlier ruling in *Harrison I,* 176 F.3d at 785, that the test for determining materiality is whether the false statement has a natural tendency to influence agency action or is capable of influencing agency action.  The court went on to explain that it therefore had to reject the defendant's argument that materiality should depend on "the actual effect the truth or falsity of a certification has upon the government's decision to pay."  352 F.3d at 916 (quoting the defendant's brief).  The court pointed out that to adopt that approach would be "to change the standard of proof required to establish materiality in an FCA case."  *Id*.

Thus, it should come as no surprise, given that the majority of courts apply the "natural tendency" standard for materiality, that the decisions holding that reliance and causation are not prerequisites for liability are legion.  *See, e.g., United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 189 (5th Cir. 2009) (unlike common law fraud,

the FCA does not require elements of reliance and damages; the statute offers a civil penalty for proof of fraudulent claims whether or not paid); *United States ex rel. Davis v. Lockheed Martin Corp.,* 2010 WL 4607411 (N.D.Tex. November 15, 2010) at *6 (FCA lacks the elements of reliance and damages present in a common law fraud claim)*; United States v. United Technologies Corp.*, 255 F.Supp.2d 779, 782 (S.D. Ohio 2003, *aff'd in part, rev'd in part on other grounds*, 2010 U.S. App. LEXIS 23710 (6th Cir. November 18, 2010) (reliance is not an element of a cause of action under the FCA). As explained recently by the Sixth Circuit in *United States v. United Technologies Corp.*, 2010 U.S. App. LEXIS 23710 (6th Cir. 2010) at *5:

> The False Claims Act, unlike the Truth in Negotiations Act, does not contain an affirmative defense if the government does not rely on a false statement.

In other words, "materiality does not require a plaintiff to show conclusively that, were it aware of the falsity, the government would not have paid. Rather, it requires only a showing that the government **may** not have paid." *United States ex rel. Lemmon v. Envirocare of Utah, Inc*., 614 F.3d 1163, 1170 (10th Cir. 2010) (emphasis in original).

This is to disincentivize a contractor from attempting to benefit by trying to slip a false claim past an over-taxed government reviewer. *Rogan*, 517 F.3d at 452. Moreover, as the Fourth Circuit explained in *Harrison II*, the government may have good reasons to pay a claim even when it learns of a falsehood because the particular

contract in question is vital to the government's interests, or it may cost the government more in the long run to re-bid the contract.  352 F.3d at 917.

The corollary of the foregoing principles–which are firmly entrenched in the case law--is that the government may prevail on liability, and recover a civil penalty for each false claim, even in the absence of damages, as noted above.  *E.g.*, *United States ex rel. Rudd v. Schimmels (In re Schimmels)*, 85 F.3d 416, 419 n.1 (9th Cir. 1996); *United States ex rel. Hagood v. Sonoma County Water Agency*, 929 F.2d 1416, 1421 (9th Cir. 1991).  *See also Varljen v. Cleveland Gear Co.*, 250 F.3d 426, 429 (6th Cir.2001) ("recovery under the FCA is not dependent upon the government's sustaining monetary damages.").  "Put plainly, the statute is remedial and exposes even unsuccessful false claims to liability."  *Grubbs* at 189.

In short, LMC's suggestion that reliance or causation are required for liability under the FCA to be established, or that those concepts are implicated in determining the materiality of a false claim or false statement, is simply wrong.

**4.    Government Knowledge Is Not A Legal Defense To a Defendant's Liability Under the FCA.**

LMC incorrectly asserts "[g]overnment knowledge and approval of a claim before it is presented for payment negates liability."  LMC's Memorandum at 20. LMC further argues: "The fact that the government knew and approved of the FOSS used on the contract precludes any finding of liability under the FCA for non-disclosure."  LMC's Memorandum at 24.

This argument appears to be simply a variation on the proposition that reliance, causation and damages are necessary to establish a defendant's liability under the FCA, and it is incorrect for the reasons discussed in the preceding section. Even if the government decides to pay a claim after discovering a contractor's wrongdoing, that decision does not undo or negate the contractor's FCA liability for submitting the false statement or false claim in the first place. *Harrison II* (the government may have valid reasons for paying anyway); *Grubbs* (the FCA exposes even unsuccessful claims to liability); *Hagood* (it is not necessary to prove the government was actually damaged in order to establish liability)*; Varljen* (same). It is well-settled that the government's knowledge of the falsity of a claim does not automatically preclude FCA liability. See, e.g., *Shaw v. AAA Engineering & Drafting, Inc.*, 213 F.3d 519, 534 (10th Cir. 2000); *Kreindler & Kreindler v. United Technologies Corp.*, 985 F.2d 1148, 1157 (2d Cir. 1993); *United States ex rel. Hagood v. Sonoma Cty. Water Agency*, 929 F.2d 1416 (9th Cir. 1991).

Government knowledge, if relevant at all, is only relevant to whether the government contractor can be said to have submitted a false claim "knowingly" under the statute. *United States ex rel. Becker v. Westinghouse Savannah River Co.*, 303 F.3d 284, 288-89 (4th Cir. 2002); *Kreindler*, 985 F.2d at 1157; *Hagood*, 929 F.2d at 1421; *Shaw*, 213 F.3d at 534; *United States ex rel. Durcholz v. FKW, Inc.*, 189 F.3d 542, 544-45 (7th Cir. 1999); *United States ex rel. A-Plus Homecare, Inc. v. Medshares*

*Management Group, Inc.*, 400 F.3d 428, 454 (6th Cir. 2005); *United States ex rel. Burlbaw v. Orenduff*, 548 F.3d 931, 952-53 (10 Cir. 2008); cf. *United States v. Southland Mgmt. Corp.*, 326 F.3d 669, 682 n.8 (5th Cir. 2003) (noting that the "inaptly named" defense of government knowledge "is not a statutory defense to FCA liability but a means by which the defendant can rebut the government's assertion of the 'knowing' presentation of a false claim").

For this effect on the defendant's mental state to occur, however, the defendant must prove that it was aware the government knew the claim was false.  *See Southland Mgmt. Corp.*, 326 F.3d at 682 n.9 ("[T]he government's knowledge of a false claim would not be an effective defense if the person making the false statement did not know that the government knew it was false.").  Other courts have adopted the same approach, requiring that the government, having obtained full knowledge of the particulars of a claim, communicate its approval of those particulars to the defendant in order for the defendant's knowledge to be negated.  *See Durcholz*, 189 F.3d at 545 (using the same standard as Becker); *Burlbaw*, 548 F.3d at 952 (government knowledge inference "arises when the government knows and approves of the facts underlying an allegedly false claim prior to presentment").

A number of other courts have articulated the standard as a requirement that the defendant disclose all relevant facts about its claims to the government and get tacit approval of those facts through an open discussion or cooperation with the

government to resolve those issues that would make the defendant's claims false.  See *United States ex rel. Butler v. Hughes Helicoptors, Inc.*, 71 F.3d 321, 327 (9th Cir. 1995) (scienter is negated if Army and government contractor "completely cooperated and shared all information during testing" of product at issue); *United States ex rel. Costner v. URS Consultants, Inc.*, 317 F.3d 883, 887-88 (8th Cir. 2003) ("A contractor that is open with the government regarding problems and limitations and engages in a cooperative effort with the government to find a solution lacks the intent required by the Act."); *Wang v. FMC Corp.*, 975 F.2d 1412, 1420 (9th Cir. 1992) (*scienter* negated where contractor was open with government about problems and engaged in dialogue with government about solutions); *United States ex rel. Jordan v. Northrop Grumman Corp.*, 2002 WL 34251040, at *18 (C.D. Cal. Aug. 5, 2002) (noting that government knowledge cases typically require a contractor's "full disclosure of the specific facts underlying the particular claim prior to submission of that claim").

This requirement reflects sound policy because it furthers the FCA's primary goal of maintaining the integrity of the government contracting process.  Limiting the "government knowledge" defense as courts have done--that is, to those situations where the contractor discloses all relevant details underlying a claim and gets approval of those details--promotes efficiency and integrity in government contracting by encouraging contractors to come forward about potential problems or wrongdoing and cooperate with the government to reach solutions.  *United States v. Newport News*

*Shipbuilding, Inc.*, 276 F. Supp. 2d 539, 564 (E.D. Va. 2003) (finding that defendants did not "knowingly" submit false claims if they "made concerted and conscientious efforts to ensure compliance").

To the extent that LMC here argues that government knowledge, if shown, might negate any conclusion that it acted with requisite *scienter* under the FCA, the Court should follow the narrow approach adopted in the cases cited above for making any such evaluation, and should reject LMC's argument that government knowledge, without more, automatically nullifies FCA liability.

DATED: December 13, 2010

Respectfully submitted,

ANDRÉ BIROTTE JR.
United States Attorney


　　/s/ Kent Kawakami
KENT KAWAKAMI
Assistant United States Attorney
Room 7516, Federal Building
300 North Los Angeles Street
Los Angeles, California  90012
Telephone: (213) 894-5710
Facsimile: (213) 894-2380
Attorneys for the United States of America

TONY WEST
Assistant Attorney General
JOYCE R. BRANDA
PATRICIA DAVIS


    /s/ John Kolar
JOHN A. KOLAR (DC Bar No. 292953,
john.kolar@usdoj.gov)
U.S. Department of Justice
P.O. Box 261
Ben Franklin Station
Washington, D.C.  20044
Telephone:  (202) 305-9301

1

## PROOF OF SERVICE BY MAILING

2      I am over the age of 18 and not a party to the within action.  I am employed by

3  the Office of United States Attorney, Central District of California.  My business

4  address is 300 North Los Angeles Street, Suite 7516, Los Angeles, California 90012.

5      On December 21, 2010, I served <u>United States' Amicus Curiae Brief in</u>

6  <u>Response to Lockheed Martin Corporation's Motion for Summary Judgment</u> on each

7  person or entity named below by enclosing a copy in an envelope addressed as

8  shown below and placing the envelope for collection and mailing on the date and at

9  the place shown below following our ordinary office practices.  I am readily familiar

10  with the practice of this office for collection and processing correspondence for

11  mailing.   On the same day that correspondence is placed for collection and mailing,

12  it is deposited in the ordinary course of business with the United States Postal

13  Service in a sealed envelope with postage fully prepaid.

14      Date of mailing: December 21, 2010.  Place of mailing: Los Angeles,

15  California.

16      Person(s) and/or Entity(s) to Whom mailed:

17      SEE ATTACHED SERVICE LIST

18      I declare under penalty of perjury under the laws of the United States of

19  America that the foregoing is true and correct.

20      I declare that I am employed in the office of a member of the bar of this

21  court at whose direction the service was made.

22      Executed on: December 21, 2010 at Los Angeles, California.

23                    _____/s/_____

24                    ZENAIDA A. ROSACIA

25

26

27

28

1
2

## SERVICE LIST

3
4  **Thomas F Corcoran**
   Office of the United States Attorney
5  36 S Charles St Fourth Floor
6  Baltimore, MD 21201

7  **Paul D Cullen, Sr**
8  The Cullen Law Firm PLLC
   1101 30th St NW Suite 300
9  Washington, DC 20007

10

11 **James A Moody**
   James A Moody
12 1101 30th Street, NW Suite 300
13 Washington, DC 20007

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28