UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

# MEMORANDUM

| | | | |
|---|---|---|---|
| Case No. | CV 08-561 DSF (FMOx) | Date | 1/18/11 |
| Title | United States ex rel. Nyle Hooper v. Lockheed Martin Corp. | | |

| | |
|---|---|
| Present: The Honorable | DALE S. FISCHER, United States District Judge |

| | |
|---|---|
| Debra Plato | Not Present |
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:**   (In Chambers) Order GRANTING Motion for Summary Judgment (Docket No. 131)

## I. BACKGROUND

This False Claims Act case by qui tam Plaintiff Nyle Hooper alleges fraudulent conduct by Defendant Lockheed Martin Corporation ("LMC") in conjunction with the Air Force RSA IIA project. The United States has not intervened.[1] Hooper claims that LMC and its predecessor Loral Systems Company presented bids for the RSA IIA project that knowingly and fraudulently underestimated costs. Hooper also claims that LMC failed to disclose, or failed to disclose in a timely fashion, its use of free and open source software ("FOSS") in the project. Additionally, Hooper claims that LMC did not perform project testing in accordance with the Air Force agreements either by skipping tests entirely, by performing tests in an improper order, or by using an invalid and self-serving testing methodology. LMC now moves for summary judgment arguing that Hooper has not produced any evidence to support his claims.[2]

---

[1] The government filed an amicus brief addressing several legal issues, but taking no position on whether the motion should be granted.

[2] Hooper attempted to supplement the record with additional evidence on January 7, 2011, almost three weeks after his opposition was due. This evidence is stricken as untimely. The Court has considered the responses to LMC's evidentiary objections.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## MEMORANDUM

## II. UNDISPUTED FACTS[3]

The RSA IIA project is designed to provide a replacement for software and hardware used in launch operations at Vandenburg Air Force Base and Cape Canaveral. (SUF ¶ 1.) In 1995 the project was put out to bid with various quality measures being deemed more important than cost considerations. (SUF ¶¶ 4-5.) The Air Force had determined that this would be a cost-reimbursement contract[4] because the project requirements could not be reasonably defined in advance and there were large uncertainties that prevented a realistic fixed-price contract. (SUF ¶ 6.) In addition to receiving three competitive bids, the Air Force commissioned its own independent bid and adjusted the competitive bids in accordance with its own independent views. (See SUF ¶¶ 7-9.) Loral's bid was not the low cost bid, but was successful because it provided the "best overall value." (SUF ¶ 11.) Prior to awarding the contract, the Air Force determined that certain aspects of the Loral bid were too optimistic and adjusted Loral's cost estimates upward. (SUF ¶ 10.) Eventually, the division of Loral responsible for the RSA IIA project was purchased by LMC. (SUF ¶ 13.) During the life of the project, LMC periodically provided the Air Force with cost estimates related to the project. (SUF ¶ 15.) The Air Force was involved in these estimates and often directed LMC to lower cost estimates. (SUF ¶¶ 16, 24.)[5] During the life of the program, LMC and the Air Force decided to use FOSS for certain software requirements, and the government even directed certain FOSS usage. (SUF ¶¶ 31, 36.)[6] There is no dispute that LMC has disclosed certain FOSS used in the RSA IIA project, but Hooper claims that some FOSS has not been properly disclosed. (See SUF ¶ 45 and responses.) The original Loral proposal for the RSA IIA project included testing plans, which were approved by the Air Force. (SUF ¶¶ 72-74.) The Air Force employed several independent consultants to monitor testing and reliability of the RSA IIA software. (SUF ¶¶ 76-79.) These consultants had high

---

[3] The Court has ruled on LMC's evidentiary objections in a separate order.

[4] A cost-reimbursement contract is one where instead of being paid a fixed agreed-upon amount, the contractor is reimbursed for actual costs plus award fees based on criteria set out in the contract. (SUF ¶ 2.)

[5] Hooper purports to contest aspects of SUF ¶ 24, but does not appear to contest this general proposition.

[6] Hooper purports to dispute these facts, but his response to SUF ¶ 31 is not supported by any admissible evidence and his response to SUF ¶ 36 – which notes that LMC sought permission to use Linux – does not contradict the asserted fact that the government directed LMC to use certain FOSS.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

levels of access to the project and were intimately involved in the testing of the software. (Id.)[7]

### III. LEGAL STANDARD

Summary judgment shall be granted where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden of demonstrating the absence of a genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). The moving party need not disprove the opposing party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Rather, if the moving party satisfies this burden, the party opposing the motion must set forth specific facts, through affidavits or admissible discovery materials, showing that there exists a genuine issue for trial. Id. at 323-24; Fed. R. Civ. P. 56(e). "This burden is not a light one." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010). The non-moving party must do more than show there is some "metaphysical doubt" as to the material facts at issue. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in his favor. Anderson, 477 U.S. 252.

"[A] district court is not entitled to weigh the evidence and resolve disputed underlying factual issues." Chevron Corp. v. Pennzoil Co., 974 F.2d 1156, 1161 (9th Cir. 1992). Rather, "the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion." Matsushita, 475 U.S. at 587-88 (internal quotation marks and ellipsis omitted). But the "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson, 477 U.S. at 247-48. An issue of fact is a genuine issue if it reasonably can be resolved in favor of either party. Id. at 250-51. "[M]ere disagreement or the bald assertion that a genuine issue of material fact exists" does not

---

[7] In his responses to SUF ¶¶ 77 and 79, Hooper purports to contest whether the Air Force and its consultants were always present at tests and whether the detailed testing procedure outlined in SUF ¶ 79 was always carried out. The evidence cited by Hooper is not admissible because it is both unauthenticated and hearsay. (The documents may be business records, but Hooper has not provided a foundation for that exception.) It is also unclear what the cited documents are, or for what reason they were prepared. Therefore, it is impossible to gauge their relevance to SUF ¶¶ 77 and 79.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

preclude summary judgment.  Harper v. Wallingford, 877 F.2d 728, 731 (9th Cir. 1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. at 248.

## IV. ANALYSIS

Liability under the False Claims Act requires "(1) a false statement or fraudulent course of conduct, (2) made with scienter, (3) that was material, causing (4) the government to pay out money or forfeit moneys due." United States ex rel. Hendow v. University of Phoenix, 461 F.3d 1166, 1174 (9th Cir. 2006).  Defendant must have acted knowingly in making the false claim, with the intent to deceive.  Id. at 1175.

**1.  Fraudulent Underbidding**

LMC argues that a fraudulent underbid on a government contract cannot create liability under the False Claims Act.  The Court need not reach this issue because Hooper has not presented sufficient evidence of fraudulent underbidding to allow his claims to survive summary judgment.

Hooper's underbidding claims rest on extremely limited evidence.  First, the RSA IIA project has cost much more than was originally estimated and bid by Loral.  (See Hooper Resp. to SUF ¶¶ 96-97.)  Second, Michael Allen has testified that he was asked by LMC supervisors to lower his estimates on two items that were part of the RSA IIA project.  (See id. ¶¶ 117-19.)  Third, LMC's reassessment of the cost of the RSA IIA project used different parameters and came to a substantially higher cost estimate than Loral's original bid.  (See id. ¶¶ 101-109.)

None of the evidence, even interpreted in the light most favorable to Hooper, demonstrates that Loral or LMC knowingly submitted a false bid to the Air Force.  Mere cost overruns do not imply fraudulent underbidding.  If it were otherwise, a False Claims Act case could go to trial whenever government project costs exceeded expectations.  In fact, the Air Force knew it was likely that the RSA IIA project costs would exceed initial expectations.  (SUF ¶¶ 6, 11.)  That Allen may have been asked to develop lower cost estimates does not imply that Loral or LMC knowingly submitted a false bid.  It implies that LMC intended to submit a lower bid.  Hooper presents absolutely no evidence to suggest that any Loral/LMC managers who requested lower estimates did so with the intent to submit unsupportable bids or for any other nefarious purpose.  In any event, Allen has testified that LMC actually submitted his initial estimate to the Air Force in one instance where he was asked to lower the estimate, and that he has no knowledge of what

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

LMC did in the other. (See Black Decl., Ex. A (Allen Depo.) at 223:17-224:1; 229:5-23.) Similarly, Hooper makes no connection between the higher estimates later made by LMC and any knowledge by Loral that it was underestimating its original bid. While the evidence produced by Hooper might be consistent with fraudulent underbidding, it does not suggest or infer underbidding because – despite voluminous discovery – Hooper has no evidence as to Loral or LMC's state of mind in making the bid and estimate choices that they did. At best, Hooper's minimal circumstantial evidence creates a vague "metaphysical doubt" as to state of mind that could not support a verdict by a reasonable jury. See In re Oracle Securities Litig., 627 F.3d at 387.

2.   **FOSS**

The undisputed facts show that LMC was allowed to use FOSS in the RSA IIA project. (SUF ¶¶ 31-36.) Hooper claims that eight pieces of FOSS have not been disclosed to the Air Force, (see SUF ¶ 138),[8] but provides no evidence that the software he identifies is actually FOSS. Hooper names eight pieces of software used in the RSA IIA project, identifies eight pieces of FOSS with the same or similar names, and then asserts – with no apparent foundation – that the RSA IIA software is the same code as the identified FOSS.[9] This is not a matter for argument – the code is either the same or it is not, and Hooper provides no evidence that it is the same. Hooper also claims that LMC should have disclosed the FOSS it used earlier in the process, but has been unable to identify any requirement that FOSS be disclosed at any particular time. Hooper claims that copyrighted software has to be disclosed to the Air Force contracting officer before being incorporated into Air Force software, but the only evidence or authority provided for this is a single sheet list of federal acquisition requirements.[10] (See SUF ¶ 139.) Notably, Air Force personnel responsible for oversight of the RSA IIA project have testified that it is their view that there is no requirement that FOSS be disclosed at any

---

[8] This portion of SUF ¶ 138 was only provided through an improper use of a Notice of Errata filed three days after Hooper's opposition was due.

[9] LMC has provided a declaration identifying seven of the eight pieces of software as specific, non-FOSS software and pointing out that the one piece of FOSS was, in fact, disclosed to the Air Force. (Avila Decl. ¶¶ 6-8, Ex. A.)

[10] It is a single sheet that is difficult to locate given (1) Hooper's counsel's practice of lumping unrelated documents together into a single "exhibit" solely based on who produced the documents and (2) the failure of counsel to provide tabs in the paper chambers copy of the exhibits in violation of the Court's Standing Order ¶ 6(c).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## MEMORANDUM

specific time prior to delivery and that the Air Force could reject the use of FOSS if it deemed it necessary. (See SUF ¶¶ 58, 66.)[11] In short, Hooper's claims regarding FOSS are completely unsupported and summary judgment is appropriate.

### 3. Fraudulent Testing

Hooper's fraudulent testing allegations are also unsupported. He claims that LMC did not perform certain unit level tests, but the evidence cited does not support this allegation. (See SUF ¶ 150.) And while Hooper points to certain tests that were not done in the order specified by LMC agreements with the Air Force, he provides no evidence to rebut LMC's evidence that the Air Force was aware of, and approved, the out-of-order tests. A "false" statement is not "knowingly" false if the government is aware of the "falsity" and approves of the submission. See United States ex rel. Butler v. Hughes Helicopters, Inc., 71 F.3d 321, 328 (9th Cir. 1995). Hooper and his witness Michael Allen take issue with testing methods used by LMC – specifically the LMC practice of adjusting testing expectations to match actual results – and with a certain disabled Ethernet card in one component of the project. But again, Hooper provides no evidence to rebut the voluminous evidence that the Air Force or consultants representing the Air Force were intimately involved in the RSA IIA testing and were aware of LMC's testing practices and the Ethernet card issue. Given the Air Force's involvement with the testing, there is no evidence to support any fraud in the RSA IIA testing.

## V. CONCLUSION

The motion for summary judgment is GRANTED.

IT IS SO ORDERED.

---

[11] Neither party has directly argued the actual governing contracts and regulations except through Hooper's stricken expert report.