STUART F. DELERY
Assistant Attorney General
MICHAEL D. GRANSTON
JUDITH RABINOWITZ
JOHN A. KOLAR
GREGORY PEARSON
    United States Department of Justice
    P.O. Box 261, Ben Franklin Station
    Washington, D.C. 20044


ANDRÉ BIROTTE JR.
United States Attorney
KENT KAWAKAMI (Cal Bar. No. 149803)
Assistant United States Attorney
    Room 7516, Federal Building
    300 North Los Angeles Street
    Los Angeles, California 90012
    Telephone: (213) 894-4858
    Facsimile: (213) 894-2380
    kent.kawakami@usdoj.gov

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES *ex rel.* NYLE HOOPER,<br><br>           Plaintiff,<br><br>           v.<br><br>LOCKHEED MARTIN CORPORATION,<br><br>           Defendant. | CV NO. 08-00561 BRO (PJWx)<br><br>**STATEMENT OF INTEREST OF THE UNITED STATES REGARDING DEFENDANT LOCKHEED MARTIN'S MOTION FOR SUMMARY JUDGEMENT OR IN THE ALTERNATIVE PARTIAL SUMMARY JUDGEMENT**<br><br>Date:     December 9, 2013<br>Time:     1:30 p.m.<br>Hon. Beverly Reid O'Connell |

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

II.  FACTUAL AND PROCEDURAL BACKGROUND . . . . . . . . . . . .  2

III.  THE UNITED STATES' VIEWS ON THE LEGAL ISSUES . . . . . .  4

    A. The Six-Year Statute of Limitations Period Under the
       FCA Begins to Run When a Claim for Payment is Submitted..  4

    B. The Falsity Element of the FCA Does Not Require A
       Showing That Defendant Lied . . . . . . . . . . . . . . . . . . . . . . . . . .  7

    C. Government Knowledge Is Irrelevant To Falsity And Not
       An Automatic Bar To FCA Liability . . . . . . . . . . . . . . . . . . . . .  10

    D. Materiality . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

IV.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

i

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

## Federal Cases

*Avco Corp. v. U.S. Dep't of Justice*
  884 F.2d 621 (D.C. Cir. 1989)..............................................................1

*Hagood v. Sonoma County Water Agency*
  81 F.3d 1465 (9th Cir. 1996);............................................................9

*Harrison v. Westinghouse Savannah River Co,*
  352 F.3d 908 (4th Cir. 2003) ............................................................8

*Hooper v. Lockheed Martin Corp.*
  688 F.3d 1037 (9th Cir. 2012).................................................. passim

*United States ex rel. A+ Homecare, Inc. v. Medshares Mgmt. Group Inc.*
  400 F.3d 428 (6th Cir. 2005) ......................................................... 12

*United States ex rel. Bauchwitz v. Holloman*
  671 F. Supp.2d 674 (E.D. Pa. 2009)...............................................6

*United States ex rel. Berge v. Bd. of Trs. of the Univ. of Ala.*
  104 F.3d 1453 (4th Cir.1997) .........................................................12

*United States ex rel. Butler v. Hughes Helicopters, Inc.*
  71 F.3d 321 (9th Cir. 1995) ..................................................... 10, 11

*United States ex rel. Eisenstein v. City of New York*
  556 U.S. 928 (2009) .........................................................................2

*United States ex rel. Feldman v. Van Gorp*
  697 F.3d 78 (2d Cir. 2012) ............................................................ 13

*United States ex rel. Hagood v. Sonoma County Water Agency*
  929 F.2d 1416 (9th Cir.1991)..................................................... 9, 11

*United States ex rel. Harrison v. Westinghouse Savannah River Co.*
  176 F.3d 776 (4th Cir. 1999)................................................. 5, 7, 8, 10

ii

*United States ex rel. Hendow v. Univ. of Phoenix*

461 F.3d 1166 (9th Cir. 2006)................................................................5

*United States ex rel. Oliver v. The Parsons Co.*

195 F.3d 457 (9th Cir. 1999) ...............................................................7

*United States ex rel. Plumbers & Steamfitters Local Union No. 38 v. C.W. Roen Const. Co.*

183 F.3d 1088 (9th Cir. 1999) ...........................................................9

*United States ex rel. Wilson v. Kellogg, Brown, and Root, Inc.*

525 F.3d 370 (4th Cir. 2008) ............................................................ 14

*United States v. Bourseau*

531 F.3d 1159 (9th Cir. 2008.) ..................................................... 12 , 13

*United States v. Newport News Shipbuilding, Inc.,*

276 F. Supp.2d 539 (E.D. Va. 2003) ...................................................9

*United States v. Rogan*

517 F.3d 449 (7th Cir. 2008) ........................................................ 13

*Wang v. FMC Corp.*

975 F.2d 1412 (9th Cir. 1992) .................................................... 8, 9

**Federal Statutes**

28 U.S.C. § 517 ................................................................................1

31 U.S.C. § 3729(a)(1)...................................................................8

31 U.S.C. § 3729(b)........................................................................9

31 U.S.C. § 3730(b)(4)....................................................................1

31 U.S.C. §§ 3729-3733 ............................................................ 1, 5

iii

## I.    INTRODUCTION

Relator Nyle Hooper brought this *qui tam* action under the False Claims Act (FCA), 31 U.S.C. §§ 3729-3733, to recover penalties and damages arising from false claims for payment allegedly made by defendant Lockheed Martin Corp. (Lockheed) under a contract with the U.S. Air Force.  The United States declined to intervene in the action and the relator elected to proceed with the litigation.  *See* 31 U.S.C. § 3730(b)(4).  Lockheed has now moved for summary judgment based, in part, on legal arguments that are incorrect and that could have an adverse effect on the United States' ability to enforce the Act.  The United States therefore files this brief pursuant to the FCA and 28 U.S.C. § 517 (providing for Department of Justice participation in any federal court litigation to attend to the interests of the United States).

The FCA is "the government's primary litigative tool for the recovery of losses sustained as the result of fraud against the government."  *Avco Corp. v. U.S. Dep't of Justice*, 884 F.2d 621, 622 (D.C. Cir. 1989).  The vast majority of successful actions under the False Claims Act are pursued by the Attorney General. The government, therefore, has a significant interest in how decisions by the courts, even in declined actions, may shape future enforcement of the statute. Moreover, although the government has declined to intervene in this case, it remains the real party in interest. *United States ex rel. Eisenstein v. City of New*

*York*, 556 U.S. 928, 934 (2009).  Accordingly, the United States files this brief to ensure that the Court is apprised of applicable law and case authority regarding the issues raised by Lockheed in its motion for summary judgment.[1]

## II.   FACTUAL AND PROCEDURAL BACKGROUND

In 1995, the Air Force awarded the Range Standardization and Automation IIA (RSA IIA) contract to Loral.  Lockheed subsequently became responsible for the contract after acquiring Loral.[2]  *See Hooper v. Lockheed Martin Corp*., 688 F.3d 1037, 1041 (9th Cir. 2012).  The objective of the RSA IIA contract was to automate, standardize, and modernize software and hardware used to support space and launch operations at Vandenberg Air Force Base (Western Range) and Cape Kennedy (Eastern Range), while also providing continued support for and transition from legacy systems.  *Id*.  The contract was a cost reimbursement plus award fee contract, under which the contractor is reimbursed for its actual costs and receives periodic award fees based on its overall performance.  *Id*.

As part of the contract competition, the Air Force issued a Request for Proposal (RFP) that laid out a number of factors that the Air Force would consider in deciding which company would be awarded the contract.  *Id*. at 1042.  Four

---

[1] On May 20,2009, the Fraud Enforcement and Recovery Act of 2009 ("FERA") was signed into law, amending the FCA and resulting in a recodification of the statute.  This motion cites to the FCA as codified at the time of alleged violations.

[2] For the sake of convenience, this brief will refer to Lockheed and Loral Corp. collectively as "Lockheed."

factors --- management, systems engineering, systems integration, and product development --- were equal in importance. *Id*. The last factor --- cost --- was of lessor importance, but was still a consideration in the decisional process. *Id*. Three companies responded to the RFP. After an evaluation of these factors, the contract was awarded to Lockheed. *Id*.

In 2005, the relator, Nyle Hooper, filed this *qui tam* action against Lockheed alleging a number of violations of the FCA in connection with the RSA IIA contract. *Id*. at 1041. In July 2011, this Court dismissed the relator's action, and the relator appealed that decision. *Id*. In August 2012, the Ninth Circuit affirmed the dismissal of the relator's action, in part, and reversed the dismissal, in part. *Id*. at 1053. In particular, the Ninth Circuit reversed and remanded the relator's "false estimate" claim, holding that "false estimates, defined to include fraudulent underbidding, in which the bid is not what the defendant actually intends to charge, can be a source of liability under the FCA." *Id*. at 1049.

In the case that remains, relator alleges that Lockheed's bid for the contract contained a false cost estimate and that some of Lockheed's proposals regarding modifications to the contract also contained false cost estimates. In particular, he alleges that the cost estimates were based on artificially high software productivity rates that caused the cost estimates to be lower than they would have been had Lockheed used the actual software productivity rates. He alleges that Lockheed

knew that these cost estimates were false and that they were material to Air Force's decision to award the contract and the modifications to Lockheed, resulting in false claims to the government in violation of the FCA.  Lockheed has now filed a motion for summary judgment on these allegations.

## III.  THE UNITED STATES' VIEWS  ON THE LEGAL ISSUES

Lockheed makes four legal arguments that are contrary to established FCA law and that could materially undermine the government's enforcement of the Act. These arguments ignore well-settled principles that:

(1)  the six-year statute of limitations period for a violation of the FCA begins to run when a claim for payment is submitted to the United States, and not when a false statement is made seeking the contract under which the claims are made;

(2)  a statement can be false under the FCA regardless of whether it amounts to a lie;

(3) government knowledge is irrelevant to falsity and not an automatic bar to FCA liability; and,

(4)  a statement is material under the FCA if it has a natural tendency to influence, or be capable of influencing, the decision maker; the statement does not have to actually influence the decision maker.

### A.  The Six-Year Statute of Limitations Period Under the FCA Begins to Run When a Claim for Payment Is Submitted

The FCA provides that an action may not be brought under the Act "more than 6 years after the date on which the violation of [the Act] is committed."  31

- 4 -

U.S.C. § 3731(b)(1).[3]  A violation occurs when a person "knowingly presents … a false or fraudulent claim for payment" to the government.  *Id.* at § 3729 (a)(1); *see United States ex rel. Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784-86 (4th Cir. 1999) (finding that a violation of the FCA attaches to the claim for payment, not the underlying fraudulent conduct or false statement).  Accordingly, it is the claim for payment that triggers the limitations period.

Where, as here, the allegation is that a contract was obtained as the result of a false statement or fraudulent conduct, the violation of the FCA occurs when a claim for payment is submitted under that contract.  *See United States ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166, 1173 (9th Cir. 2006) (finding that liability under the FCA attaches to claims submitted to the government under a contract, where the contract was originally obtained through false statement or fraudulent conduct); *Harrison*, 176 F.3d at 785 and 790-91(finding that claims submitted under a contract obtained by false statements could be actionable under the FCA, but making clear that a violation of the Act did not occur until a claim for payment was submitted under the contract).

In its summary judgment brief, Lockheed asserts that the relator's action is barred by the FCA's six year statute of limitations because the allegedly false

---

[3] The statute of limitations period under the FCA may be longer that six years is some cases, see 31 U.S.C. § 3731(b); however, in this matter the parties appear to agree that the six-year period applies.

estimates submitted in connection with the contract in 1995 and the allegedly
false estimates submitted in connection with the subsequent contract
modifications were not presented to the government until more than six years
before the relator filed this action in July 2005.  However, when the false
estimates were presented is irrelevant to when the limitations period began to run
since a false estimate alone does not violate the FCA.  The FCA is not violated
until a claim for payment is submitted under a contract that was obtained through
the false estimate.

Lockheed's reliance on *United States ex rel. Bauchwitz v. Holloman*, 671
F. Supp.2d 674, 692 (E.D. Pa. 2009), is misplaced.  There the court held that
when a person makes a grant application to the government that is supported by
false statements, the FCA statute of limitations is triggered by the grant
application and not by the government's payment of the grant.  *Id*.  The court
found that the grant application was a claim for money and thus triggered the
statute of limitations period.  *Id*. at 688.  Contrary to Lockheed's suggestion, the
court did not find that a false statement triggers the limitations period.
*Bauchwitz* is consistent with the position the government advances in this
Statement of Interest; namely, that a claim for payment triggers the limitations
period whether it is in the form of a grant application, an invoice under a
contract, or other demand on the public fisc.  To the extent the relator filed his

complaint within six years of a knowingly false claim for payment, the complaint

is not barred under the FCA's limitations period.

### B.   The Falsity Element Of The FCA Does Not Require A Showing That Defendant Lied

An estimate is false for purposes of the FCA when it "is not what the

defendant actually intends to charge." *Hooper* at 1049.  Estimates are not false

merely because they prove to be in incorrect in the future.  Estimates, however,

can be false where the defendant knows facts that preclude the estimate or knows

no facts that support the estimate.  *See id*. at 1048, citing *Harrison*, 176 F.3d at

792.  That is, an estimate is false when it is not a true statement of the

defendant's actual cost estimate.  *Id*.

In its summary judgment brief, Lockheed asserts that to establish falsity a

plaintiff must show not only that the estimate is false, but also that the estimate is

a "palpable lie."  This assertion is supported by neither the FCA itself nor

relevant caselaw.  The issue of falsity goes to whether a statement is objectively

true or false, not to whether the defendant, or anyone else, subjectively believes

it is correct.  *See Harrison*, 176 F.3d at 792; *United States ex rel. Oliver v. The*

*Parsons Co.*, 195 F.3d 457, 463 (9th Cir. 1999).

Adopting Lockheed's position would impose a proof obligation regarding

falsity that is not required by the FCA and that has never been previously imposed:

- 7 -

that the plaintiff prove both that a statement is false and that defendant lied when
making the statement.  The FCA includes a knowledge requirement, but this
requirement is separate and distinct from the falsity element of FCA liability.  *See*
31 U.S.C. § 3729(a)(1); *see also Hooper* at 1048; *Harrison v. Westinghouse
Savannah River Co.,* 352 F.3d 908, 913 (4th Cir. 2003).  Lockheed would impose a
requirement that plaintiff show the defendant's state of mind both as part of
establishing falsity and as a part of establishing knowledge under the FCA.  There
is no basis to impose this type of heightened and duplicative proof requirement
under the FCA.

Defendant relies on *Wang v. FMC Corp.*, 975 F.2d 1412, 1421 (9th Cir.
1992), in support of its position.  However, *Wang* in no way supports the idea that
falsity requires a "lie."  Rather, *Wang* suggests in dicta that the knowledge
requirement of the FCA may require a lie.  Importantly, this language in *Wang* has
since been clarified by the Ninth Circuit, which reaffirmed that the FCA's
knowledge element does not require a "lie":

> *While some of our cases may contain extraneous comments that might be
> read out of context to suggest that the FCA requires an intentional lie to
> trigger liability, those cases almost invariably reiterate the controlling
> statutory language that is determinative of their outcome.*  As the FCA
> provides, to rise to the level of "knowing" presentation, all  that is required is
> that the party:
>
> >   (1)  has actual knowledge of the information;
> >   (2)  acts in deliberate ignorance of the truth or falsity of the

> information; or
>
> (3)   acts in reckless disregard of the truth or falsity of the information, and no proof of specific intent to defraud is required.
>
> 31 U.S.C. § 3729(b).  We have repeatedly emphasized this statutory language when describing the scienter requirement under the FCA.  *See, e.g., Hagood v. Sonoma County Water Agency,* 81 F.3d 1465, 1478 (9th Cir. 1996); *Wang v. FMC Corp.,* 975 F.2d 1412, 1420 (9th Cir.1992); *United States ex rel. Hagood v. Sonoma County Water Agency,* 929 F.2d 1416, 1421 (9th Cir.1991).  Thus, in order to be liable for an FCA violation, [defendant's] conduct need only qualify under one of the alternative statutory standards, such as "deliberate ignorance" or "reckless disregard."

*United States ex rel. Plumbers & Steamfitters Local Union No. 38 v. C.W. Roen Const. Co.,* 183 F.3d 1088, 1092-93 (9th Cir. 1999) (emphasis added).  *See also United States v. Newport News Shipbuilding, Inc.,* 276 F. Supp.2d 539, 561, n.28 (E.D. Va. 2003) (stating that in *Plumbers & Steamfitters Local* the Ninth Circuit "rejected" the suggestion that the FCA's knowledge element requires a "lie").  Accordingly, the FCA does not require that a defendant lied or otherwise acted with intent to deceive.  All that is required is that the defendant acted with actual knowledge or in reckless disregard, or deliberate ignorance, of the truth.  31 U.S.C. § 3729(b).

In fact, on the appeal of the instant case, the Ninth Circuit expressly held that "intent to deceive" is not required to demonstrate that a defendant acted "knowingly" under the FCA in a fraud in the inducement case.  *Hooper* at 1049.

- 9 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

In particular, *Hooper* found that "intent to deceive" is "the wrong legal standard for determining FCA liability with regard to whether Hooper had established that Lockheed 'knowingly' submitted a fraudulent underbid." *Id*. The opinion reaffirms that the knowledge element of the FCA only requires that the defendant act with actual knowledge, reckless disregard of the truth, or deliberate ignorance of the truth, and that a deliberate lie is not required. *Id*.

## C.   Government Knowledge Is Irrelevant To Falsity And Not An Automatic Bar To FCA Liability

Lockheed asserts that government knowledge about a defendant's conduct precludes a finding of falsity. As established above, falsity is an objective concept: a claim or statement is true or false, regardless of the government's knowledge or the defendant's knowledge. *See Harrison*, 176 F.3d at 792. Government knowledge is simply irrelevant to whether a claim is false under the FCA. The cases cited by Lockheed in support of its assertion concern the relevance of government knowledge to whether the defendant acted knowingly, not to whether the claim was false. These cases do not support the proposition that government knowledge can preclude a finding of falsity. For example, in *United States ex rel. Butler v. Hughes Helicopters, Inc.*, 71 F.3d 321, 328 (9th Cir. 1995), the court found that the allegedly false statement was the subject of a specific dialogue between the government and the defendant and that, therefore, this was "not a

- 10 -

'knowingly' false statement."

Lockheed also suggests that government knowledge of a defendant's conduct necessarily negates a claim under the Act.  Contrary to this suggestion, it is well settled that government knowledge is not a valid affirmative defense to an action under the FCA, but is only relevant as it sheds light on the defendant's state of mind.  That a defendant has disclosed all the underlying facts to the Government may show that the defendant lacked the requisite knowledge, but that "the relevant Government officials know of the falsity is not in itself a defense." *United States ex rel. Hagood v. Sonoma County Water Agency*, 929 F.2d 1416, 1421 (9th Cir. 1991); *United States ex rel. Butler v. Hughes Helicopters, Inc.*, 71 F.3d 321, 326-27 (9th Cir. 1995).

In *United States ex rel. Butler v. Hughes Helicopters, Inc.*, 71 F.3d 321, 326-27 (9th Cir. 1995), the court made it clear that "government knowledge is no longer an automatic bar to suit" under the FCA.  Simply because it may be the case that "all the information upon which [relator] bases his case was not only available to the [government] but in the [government's] possession," that fact, taken by itself, does not defeat an FCA action.  *Id.*  Rather, government "knowledge" is relevant only to the question of whether a defendant submitted a false claim "knowingly." *Id.* at 327.  Moreover, a defendant's "argument that liability is precluded by the Government's knowledge is unpersuasive" where the defendant "neglected to

- 11 -

disclose all the pertinent information" to the government.  *United States ex rel. A+ Homecare, Inc. v. Medshares Mgmt. Group Inc*., 400 F.3d 428, 455 n. 21 (6th Cir. 2005).

Here, whether the Air Force was aware of Lockheed's actual cost estimate does not provide automatic immunity or insulation from FCA liability.  At most, the fact of the government's knowledge may be relevant to the question of whether Lockheed acted knowingly under the FCA.

## D.    Materiality

Materiality is a requirement of FCA liability.  *United States v. Bourseau*, 531 F.3d 1159, 1170-71 (9th Cir. 2008.).  A statement is material under the FCA when it has "a natural tendency to influence, or [is] capable of influencing, the decision" of the government.  *Id*.  This definition of materiality focuses on the potential effect of the false statement when it is made, rather than on the false statement's actual effect after it has been discovered.  *Id*.; *United States ex rel. Berge v. Bd. of Trs. of the Univ. of Ala.,* 104 F.3d 1453, 1459 (4th Cir.1997) (rejecting "outcome materiality" and adopting "natural tendency" test); *United States ex rel. A+ Homecare, Inc. v. Medshares Mgmt. Group Inc*., 400 F.3d 428, 440 (6th Cir. 2005) (same). [4]

---

[4] When the FCA was amended in 2009, the term "material" was defined to mean "having a natural tendency to influence, or be capable of influencing."  *See* 31 U.S.C. § 3729(b)(4).  Even

- 12 -

The test for materiality is an objective one.  *United States v. Rogan*, 517 F.3d 449, 452 (7th Cir. 2008); *United States ex rel. Feldman v. Van Gorp*, 697 F.3d 78, 95 (2d Cir. 2012).  Even if a particular government program officer subjectively considers a statement not to be material, it can be found to be material from an objective standpoint because it is capable of influencing the government agency.  *Feldman* at 95.

In its summary judgment brief, Lockheed claims that the Air Force generated its own independent cost estimate with respect to the original contract and adjusted the productivity rates submitted by Lockheed, based on that cost estimate.  Regarding the contract modifications, Lockheed claims that Air Force personnel worked with Lockheed in the preparation of the cost estimates and had access to the information related to the cost estimates submitted by Lockheed.  Lockheed argues that these actions preclude the finding that the cost estimates submitted by Lockheed to the Air Force were material to the decision to award the contract and modifications.  Lockheed's argument amounts to the kind of outcome materiality that was rejected by *Bourseau.*  It ignores that materiality is not determined by what specific government personnel do after receiving a false

---

before this amendment, however, the Ninth Circuit had adopted the natural tendency definition for materiality under the FCA, finding that it was more consistent with the plain meaning of the Act than was outcome materiality.  *Bourseau* at 1171.

- 13 -

statement or by what government personnel may have known about the false statement.  Rather, it is determined by weather the false statement potentially could have influenced an objective government agency.  Likewise, the fact that government personnel may have worked closely with a defendant and had access to defendant's data does not preclude the finding that an objective government agency was capable of being influenced by the false statement.

The case relied upon by Lockheed in support of its argument, *United States ex rel. Wilson v. Kellogg, Brown, and Root, Inc*., 525 F.3d 370, 378 (4th Cir. 2008), is of little usefulness.  *Wilson* concerned a contract to provide transportation services to the government that included a provision requiring the transportation vehicles be "maintained in a safe operating condition and good appearance." *Id*. at 374.  The relator alleged that the contractor violated the FCA by failing to maintain the safety and appearance of the vehicles.  *Id*.  The court found that a statement by the contractor that it would perform a certain work under the contract was submitted to the government months after the original contract was issued and therefore could not have been material to the government's decision to enter into the contract in the first place.  *Wilson* at 378.  In dicta, *Wilson* also stated that it was doubtful that the contractor's statement was material to the United States since the government had ample opportunity to judge the contractor's performance under the contract.  *Id*.  This dicta has little application here where the issue is not

- 14 -

whether a contractor's performance over many months met contract requirements, but rather whether discreet cost estimates were artificially low.   At any rate, to the extent this dicta can be read to support Lockheed's position, it should carry no weight in this case because it amounts to the type of outcome materiality that has been rejected by the Ninth Circuit.  It determines materiality by the government's reaction after it discovers the defendant's conduct, instead of determining materiality by the potential effect of the conduct when it occurs.

## IV.    CONCLUSION

The United States retains an interest in this suit and in the proper interpretation and application of legal principles developed under the FCA, and, accordingly, respectfully submits the foregoing for the Court's consideration.  The United States welcomes the opportunity to provide further assistance at the Court's request.

/ / /

/ / /

- 15 -

1

2                                              Respectfully submitted,

3    DATED: November 22, 2014              ANDRÉ BIROTTE JR.

4                                              United States Attorney

5

6                                              ____/s/_____

7                                              KENT KAWAKAMI

8                                              Assistant United States Attorney
                                               Room 7516, Federal Building
9                                              300 North Los Angeles Street

10                                             Los Angeles, California 90012
                                               Telephone: (213) 894-4858
11                                             Facsimile: (213) 894-2380

12

13                                             STUART F. DELERY
                                               Assistant Attorney General
14                                             MICHAEL D. GRANSTON

15                                             JUDITH RABINOWITZ
                                               JOHN A. KOLAR
16                                             GREGORY PEARSON

17

18

19                                             ____/s/_____

20                                             JOHN A. KOLAR
                                               United States Department of Justice
21                                             P.O. Box 261, Ben Franklin Station

22                                             Washington, D.C. 20044

23                                             Attorneys for the United States

24

25

26

27

28

                                            - 16 -