Mark I. Labaton (SBN 159555)
MOTLEY RICE LLP
1801 Century Park East, Suite 475
Los Angeles, CA 90067
Telephone: (310) 552-8109
Facsimile: (310) 552-8054
Email: mlabaton@motleyrice.com

Joseph A. Black
Daniel E. Cohen
James A. Moody (Of Counsel)
THE CULLEN LAW FIRM, PLLC
1101 30th Street, NW, Suite 300
Washington, DC 20007
Telephone: (202) 944-8600
Facsimile: (202) 944-8611
Email: jab@cullenlaw.com
dec@cullenlaw.com
moodyjim@aol.com

*Attorneys for Plaintiff Nyle Hooper*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES *ex rel.* NYLE HOOPER,<br><br>Plaintiff,<br><br>v.<br><br>LOCKHEED MARTIN CORPORATION,<br><br>Defendant. | Case No. CV 08-00561 BRO(PJWx)<br><br>**PLAINTIFF-RELATOR'S** <u>**TRIAL BRIEF**</u><br><br>Judge: Hon. Beverly Reid O'Connell<br>Trial Date: March 18, 2014 |

Pursuant to Central District Local Rule 16-10, Plaintiff Hooper hereby submits his Trial Brief. Since the submission of Hooper's Memorandum of Contentions of Fact and Law, the following developments have occurred.

**(1)** **Award Fees**. The Court has ruled that Award Fees are out of the case. The Parties have stipulated that the value of the original contract was $432,700,000 and that the total payments under the contract were $882,717,983. Hooper has calculated single damages in this case by subtracting the value of the original contract from the stipulated amount Lockheed received under the RSA IIA contract. Under this calculation damages are $450,000,000. Since the Court has excluded Award Fees, both the BAFO and the final payment number have to be adjusted. The original BAFO provided for $32,700,000 in Award Fees. Ex.1007, LMC-AF-0000334. Therefore, the total value of the BAFO exclusive of Award Fees was $400,000,000. The total value of contract payment excluding Award Fees was $816,900,000 (Mikkelsen Decl. Ex. A, Dkt. 267-1). Therefore, Hooper calculates total damages, exclusive of Award Fees, to equal $416,900,000.

Hooper contends that the Court's exclusion of the value of the Award Fees is improper. The Award Fees is part of Lockheed's total payment under the contract and cannot be divorced from the false claims made to secure the contract. *See United States ex rel. Hendow v. Univ. of Phoenix,* 461 F.3d 1166, 1173 (9th Cir. 2006) (citations omitted)("Liability attach[es] to each claim submitted to the government under a contract, when the contract or extension of government benefit was originally obtained through false statements or fraudulent conduct."). Thus, all claims for payment under a fraudulently obtained contract are deemed fraudulent whether or not the individual claim for payment is false. *United States ex rel. Longh,* 575 F.3d 458, 468 (5th Cir. 2009) (Under a fraudulent inducement theory, although the Defendants' "subsequent claims for payment made under the contract were not literally false, [because] they derived from the original fraudulent misrepresentation, they, too, became actionable false claims." (citations omitted)).

Since Lockheed submitted claims for payment of the Award Fees under a fraudulently induced contract, they are actionable as are any other claim made under the contract.

**(2)** <u>**Government Knowledge.**</u>  Without explanation or limitation the Court denied Hooper's Motion *in Limine* to preclude Lockheed's introduction of argument that the Government's after-acquired knowledge of the falsity of Lockheed's false cost proposals in the initial and rebids prevented a finding of falsity.  The law on Government knowledge is clear; it is <u>not</u> a legal defense, and, at most, may negate the element of falsity, but <u>only</u> where a defendant can demonstrate full and complete disclosure prior to the false claim or statement.  In *United States ex rel. Butler v. Hughes Helicopters, Inc.*, 71 F.3d 321, 326-27 (9th Cir. 1995), the court stated that "government knowledge is no longer an automatic bar to suit" under the FCA.  Simply because it may be the case that "all the information upon which [relator] bases his case was not only available to the [government] but in the [government's] possession," that fact, taken by itself, does not defeat an FCA action.  *Id.*  Rather, government "knowledge" is relevant only to the question of whether a defendant submitted a false claim "knowingly." *Id.* at 327.  Moreover, a defendant's "argument that liability is precluded by the Government's knowledge is unpersuasive" where the defendant "neglected to disclose all the pertinent information" to the government.  *United States ex rel. A+ Homecare, Inc. v. Medshares Mgmt. Group Inc*., 400 F.3d 428, 455 n. 21 (6th Cir. 2005).

Judge Phillips of this Court recently rejected a similar argument to evade liability:

> Here, the *United States' purported knowledge of Arnie Magidow's involvement at the Facility is irrelevant to the damages question* before the Court; the inquiry into the knowledge of the United States arises when considering the "knowing presentation of a claim that is

either fraudulent or simply false," not at issue on this Motion. *United States ex rel. Hagood v. Sonoma Cnty. Water Agency*, 929 F.2d 1416, 1421 (9th Cir. 1991) (internal quotations omitted) (citing 31 U.S.C. § 3729(a)(1), (2)). Even then, the Court will limit its inquiry to whether the Defendants "disclosed all the underlying facts to the government" to determine whether or not the Defendants made a "knowing presentation of what is known to be false." *Id.* at 1421. Thus, *whether or not the United States knew of Arnie Magidow's* involvement at the Facility, despite the omission of his name on any of the Facility's applications for Grants of Inspection, *does not bear on the Court's analysis here.* Moreover, to the extent Cattleman makes the argument that, in fairness, Mackby II should not be followed because of the United States' alleged knowledge of Arnie Magidow's involvement at the Facility, the Court is not persuaded to depart from Mackby II's damages calculation.

*United States ex rel. Humane Society of the United States v. Hallmark Meat Packing*, 2013 WL 5753784, *12 (C.D. Cal. April 30, 2013).

Lockheed's argument that Government knowledge is relevant is a backdoor attempt to reestablish an "outcome" materiality test rejected by the Ninth Circuit in *United States v. Bourseau*, 531 F.3d 1159, 1170-71 (9th Cir. 2008). As noted by the Government, Lockheed's argument:

> ignores that materiality is not determined by what specific government personnel do after receiving a false statement or by what government personnel may have known about the false statement. Rather, it is determined by weather the false statement potentially could have influenced an objective government agency. Likewise, the fact that government personnel may have worked closely with a defendant and had access to defendant's data does not preclude the

finding that an objective government agency was capable of being influenced by the false statement.

Statement of Interest of the United States, 12-13, Dkt. 299 at 17, 18.

Therefore, Lockheed should be precluded from arguing that the Government's knowledge precludes finding of falsity.

**(3)** **<u>Measure of Damages.</u>** Congress provided that Lockheed "is liable to the United States Government for a civil penalty" plus "3 times the amount of damages which the Government sustains because of the act of that person." 31 U.S.C. § 3729(a). Accordingly, Hooper has proposed (Dkt. 376) jury instruction #7 on the measure of damages as follows:

> The measure of the government's damage is the difference between any false estimates, defined to include fraudulent underbidding in which the bid is not what the defendant actually intends to charge, and the amount Defendant Lockheed Martin was paid under the contract.

Since this is a case of first impression and the measure of damages is dependent on the facts of each case,[1] the Ninth Circuit's opinion is taken as guidance. The April 30, 2013 opinion by Judge Phillips of this Court on damages in *Humane Society* is also precisely on point, rejecting the damages theory advanced here[2] by Lockheed.

---

[1] *See United States v. Woodbury*, 359 F.2d 370, 379 (9th Cir. 1966); *Humane Society*, 2013 WL 5753784 at 7 ("No single rule can be, or should be, stated for the determination of damages under the Act ... .[T]he courts should remain free to fashion measures of damages on a case-by-case basis. The Committee intends that the courts should be guided only by the principles that the United States' damages should be liberally measured to effectuate the remedial purposes of the Act, and that the United States should be afforded a full and complete recovery of all its damages.").

[2] Lockheed's theory here is virtually identical to the theory rejected by Judge Phillips. *Humane Society*, 2013 WL 5753784.

1         The question before the Court in *Humane Society* was, as here, the measure of damages. USDA had contracted with several suppliers for meat for school lunches and subsidized feeding programs. Some of the cattle were improperly inspected and were "defective" "downer" cows. As here, the Government and relator argued that defendants were liable for the full value of the contract because it was tainted by fraudulent inducement. Judge Phillips began her analysis of the proper method for calculating damages with the statutory language, concluding that "[t]he Court may not interpret the FCA in a way that 'would thwart the overall statutory scheme or lead to an absurd result,'" *Humane Society*, 2013 WL 5753784 at *7 citing *Chubb Customs Ins. Co. v. Space Sys./Loral Inc.*, 710 F.3d 946, 958 (9th Cir. 2013). The Government had two theories for calculating damages: the full value of the meat contracts less a setoff for humanely treated animals, and the full value of the contract because it was obtained by fraud in the inducement, specifically the hiring of a convicted felon as a "responsible person" for managing the contract. This theory is akin to the fraud in the inducement theory here, approved by the Ninth Circuit, that Loral wrongly obtained the RSAIIA contract (and rebids) by a false cost proposal. Regarding the government's second theory for FCA damages the court declined to apply the set-off damages calculation discussed in *Bornstein* and *Woodbury*. *Humane Society*, 2013 WL 5753784 at *8.

        Judge Phillips reasoned that, in contrast to cases where the Government paid too much for goods or services, the cattle were legally valueless to the Government because of the ineligibility of the packers, i.e. what the Government got (a contractor dishonest about its management) was qualitatively, not quantitatively, different from what it bargained for. *Id.* at *9. By comparison, here the Air Force got a contractor dishonest as to its cost proposals. Judge Phillips compared the dishonest packer to the dishonest Medicare provider in *United States v. Mackby*, 339 F.3d 1013 (9th Cir. 2003), where the court awarded the full value of the contract despite the fact that valuable medical services were rendered as promised.

"There was no dispute that Mackby's clinic provided physical therapy services to the patients. *Id*. at 1015, 1019. Mackby was not an eligible service provider under Medicare regulations, however, because he was not a licensed physical therapist or doctor. Moreover, he falsely used his father's PIN number to claim that the clinic was entitled to payments under the Medicare program, resulting in the clinic receiving hundreds of thousands of dollars of payment from the government. *Id.* at 1015." The *Mackby* Court had held that "[t]he fact that Mackby's clinic actually performed the physical therapy for which he claimed reimbursement does not eliminate the government's injury. *Damages under the FCA flow from the false statement. . . .* The falsity here was not Mackby's representation that patients had received physical therapy, but the use of his father's PIN to obtain payments to which he was not entitled. *Had Mackby been truthful, the government would have known that he was entitled to nothing because he was neither a doctor nor a physical therapist in private practice*." 339 F.3d at 1018-19 (emphasis added). Lockheed's ineligibility due to its false cost proposals, like Mackby's and Maggidow's (in *Humane Society*) dictate that the measure of damages is the full contract price.

Following *Mackby*, Lockheed is arguably liable for the full amount of the contract. However, in light of the guidance from the Ninth Circuit, Hooper proposes a common-sense compromise for calculating damages in underbidding cases between the two extremes (full contract value as in *Humane Society* and *Mackby* and similar "eligibility" cases vs. no damages in a CPAF case absent an allegation, e.g. of time card fraud.) Instead, Hooper proposes that damages equal to the full contract price minus the original bargain struck between Lockheed and the Air Force.

Lockheed's instruction: Lockheed's proposed instruction #17 (Dkt. 376) [3] overturns the Ninth Circuit, makes damages in underbid CPAF contracts impossible, and ignores the damage to the procurement process. As a consequence, Lockheed's instruction asks Hooper to prove the impossible, what the Air Forced "would have" done but for Lockheed's false statements. This confuses damages with materiality (all the jury need find is that the Air Force "could have" acted differently had it known the truth). For this reason alone, it should be rejected.

Lockheed's second instruction[4] renders damages in an underbid CPAF contract virtually impossible to recover, in part because there is no allegation here that Lockheed engaged in time-card fraud or that the invoices are themselves literally false. Lockheed invites the jury to look backward from the end of the contract and equate all the cost overruns with labor actually performed, hence no damages. Put differently, Lockheed wants the jury to simply presume that the Air Force would have taken exactly the same actions and paid exactly the same amount had Lockheed told the truth in its bid securing the contract in the first place. However, the "because of" language in the FCA focuses on the damages prospectively from when the false statements are made.

Burden of proof: Hooper has met his initial burden by showing (now by stipulation) the difference between what the Air Force paid for the RSAIIA system

---

[3] "To decide whether or not the government incurred any actual damages, you must decide whether or not the government paid any money to Lockheed that the government would not have paid if there had been no false or fraudulent claim, record or statement."

[4] "In deciding that, you must consider: Cost-reimbursement contracts (which is what the RSA IIA contract is), provide for payment of allowable incurred costs, to the extent prescribed in the contract. These contracts establish an estimate of total cost for the purpose of obligating funds and establishing a ceiling that the contractor may not exceed (except at its own risk) without the approval of the contracting officer."

minus the "bargain" it struck with Lockheed. Lockheed may now seek to prove an offset – that some of the "delta" was due to actual requirements upgrades ordered by the Air Force and not merely cost overruns, and if so, as noted below, might be entitled to an offset against the tripled damages. Hooper attempted to ascertain the exact amount actually paid for the software, but Lockheed's witness Les Mikelsen explained that such value could not be calculated, despite a contract provision requiring cost accounting by product. Such uncertainty, created by Lockheed, shifts the burden of proof. As Judge Phillips explained in *Humane Society*:

> Following the general principle that "the burden of any uncertainty in the amount of damages should be borne by the [alleged breaching party]," the Court agrees with the United States that it is Cattleman's burden to prove what percentage of the beef products it provided to the United States were conforming, i.e., resulting from the slaughter of cattle that had been treated humanely. *Adray v. Adry-Mart, Inc*., 76 F.3d 984, 989 (9th Cir. 1996).

2013 WL 5753784 at *16. Accordingly, Lockheed will have to prove that any of the cost overruns are due to requirements changes or upgrades ordered by the Air Force, as opposed to simply additional funding "approved" by the Air Force (which are part of the damages).

Offset: Lockheed's original answer (Dkt. 68) interposed as its tenth affirmative defense that "[t]he United States and Plaintiff did not suffer any injury or damages as a result of any action allegedly taken by Defendants." It has since withdrawn that defense. Although Lockheed has never raised the defense of "offset," it has indicated that it will present evidence that the Air Force ordered additional requirements not priced in the original bid. If the jury finds any factual merit to this claim, Lockheed would arguably be entitled to a credit, but any such credit would have to be deducted after the damage award is trebled. *See, e.g.*, *United States v. Eghbal*, 548 F.3d 1281, 1285 (9th Cir. 2008),*United States ex rel.*

*Longhi v. Lithium Power Techs., Inc.*, 575 F.3d 458, 473 (5th Cir. 2009) (citing *Bornstein*, 423 U.S. at 314). Judge Phillips held in *Humane Society* relating to the damages theory for nonconforming cattle that damages are "the full contract price it paid for the beef products it received from the [meat packers] minus the value of the beef it received from humanely treated cattle." 2013 WL 573784 at *9.

Respectfully submitted,

Dated: March 11, 2014

MOTLEY RICE LLP

By: */s/ Mark I. Labaton*
MARK I. LABATON (SBN 159555)

Dated: March 11, 2014

THE CULLEN LAW FIRM, PLLC
By: */s/ Joseph A. Black*
JOSEPH A. BLACK
(admitted pro hac)

By: */s/ Daniel E. Cohen*
DANIEL E. COHEN
(admitted pro hac)

*Attorneys for Relator*
NYLE J. HOOPER