CROWELL & MORING LLP
Mark R. Troy (CSB No. 120418, mtroy@crowell.com)
Jeffrey H. Rutherford (CSB No. 181695, jrutherford@crowell.com)
Mana Elihu Lombardo (CSB No. 228846, melombardo@crowell.com)
Megan A. Weisgerber (CSB No. 285271, mweisgerber@crowell.com)
515 South Flower St., 40th Floor
Los Angeles, CA 90071
Telephone: 213.622.4750
Facsimile: 213.622.2690

Attorneys for Defendant
LOCKHEED MARTIN CORPORATION

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| UNITED STATES *ex rel.* NYLE J. HOOPER,<br><br>Plaintiff,<br><br>v.<br><br>LOCKHEED MARTIN CORPORATION,<br><br>Defendant. | Case No. CV 08-00561 BRO (PJWx)<br><br>**DEFENDANT LOCKHEED MARTIN CORPORATION'S TRIAL BRIEF**<br><br>Trial Date: March 18, 2014<br>Judge: Hon. Beverly Reid O'Connell |

## I. INTRODUCTION

As a preliminary matter, Local Rule 16-10 does not permit parties to re-argue their failed motions in limine, as Plaintiff Hooper does in his trial brief on the subject of "award fees" and "government knowledge." Defendant Lockheed Martin Corporation ("Lockheed") submits this trial brief to address the arguments about damages raised in Hooper's trial brief (which is merely the same argument he submitted in connection with the disputed jury instructions), and to bring to the Court's attention two recent damages decisions.

Hooper, lacking **any** authority, suggests that damages here should be the difference between the estimate and the actual costs. Lockheed asserts the longstanding plain measure of damages – the benefit of the bargain -- adopted by the Supreme Court in *United States v. Bornstein*, 423 U.S. 303, 316 n. 13 (1976) ("Government's actual damages are equal to the difference between the market value of the tubes it received and retained and the market value that the tubes would have had if they had been of the specified quality"), citing C. McCormick, Law of Damages § 42, p. 137 (1935), and *United States v. Woodbury*, 359 F.2d 370, 379 (9th Cir. 1966) ("measure of the government's damages would be the amount that [the government] paid out by reason of the false statements over and above what it would have paid if the claims had been truthful"). In *United States v. Sci. Applications Int'l Corp.,* 626 F.3d 1257, 1278 (D.C. Cir. 2010), the court reversed on the basis of a jury instruction that, like Hooper's, presumed damages and ignored the value of what the government had received.

## II. MEASURE OF DAMAGES

### A. Hooper's Measure Is Completely Unsupported

Hooper says damages are the difference between the 1995 estimate $400 million and the total cost incurred by 2011 of $816,900, equaling $416,900,000 times 3 for a grand total of $1,250,700,000.

- Hooper admits he has no authority for this measure of damages, calling it

"a case of first impression" and inviting the Court simply to make a rule out of thin air.

- Hooper claims the Ninth Circuit's decision provides "guidance." In fact, the Ninth Circuit did not address damages at all.[1] It merely found that a false estimate could be an actionable false statement under the False Claims Act. That holding does not "guide" or suggest in any manner that damages **must** be found.

- Hooper's Objection to Lockheed's Concluding Instruction No. 17 refers to the Ninth Circuit's ruling, then indents a quotation, then cites the Ninth Circuit's decision. This is highly misleading. What Hooper quotes is **his own jury instruction**, not a line from the Ninth Circuit's decision, which is what it appears to be. Dkt #380, at p. 36.

- It is not unusual at all for FCA decisions to find liability for a false statement or claim but then hold that the government did not incur any actual damages.[2] If there is liability but no damages, the jury may still apply penalties for the false claims. *See, e.g., United States ex rel. Bettis v. Odebrecht Contractors of Cal., Inc.,* 393 F.3d 1321, 1326 (D.C. Cir. 2005); *Ab-Tech Constr., Inc. v. United States*, 31 Fed. Cl. 429, 434 (1994) (contractor falsely certified it was small business to get the contract; it performed the contract, and "no proof has been offered to show that the Government suffered any detriment to its contract interest because of [the] falsehoods;" therefore "the Government got essentially what it paid for"

---

[1] The word "damages" appears only once: "The FCA permits individuals, known as "relators," to file suit on behalf of the United States seeking damages from persons who file false claims for government funds." *Hooper v. Lockheed Martin Corp.*, 688 F.3d 1037, 1041 (9th Cir. 2012).

[2] That is why it is appropriate to instruct the jury that "You should not infer that the government is entitled to recover any damages merely because I am instructing you on the elements of damages." Dkt # 380 at p. 30.

CROWELL & MORING LLP
ATTORNEYS AT LAW

and no damages were awarded). As discussed below regarding Lockheed's proposed instruction, the result of the proper instruction may very well be a finding of no damages, but that would result solely from a failure of proof on damages.

- Hooper quite plainly wants an instruction that presumes damages without requiring proof that any damages were incurred. Hooper Trial Brief at 7:18-8:4 ("Hooper has met his initial burden by showing (now by stipulation) the difference between what the Air Force paid for the RSA IIA system minus the "bargain" it struck with Lockheed. Lockheed may now seek to prove an offset – that some of the "delta" was due to actual requirements upgrades ordered by the Air Force and not merely cost overruns, and if so, as noted below, might be entitled to an offset against the tripled damages.") It is some feat to have proved damages before the trial begins. To instruct the jury that damages have already been determined, let alone before liability has been proved, surely puts the cart before the horse. It would be clear legal error to provide Hooper's instruction. Also, there is no evidence that Lockheed promised to charge no more than what it proposed.

- Judge Phillips in the *Humane Society* case[3] did not create a new damages methodology out of thin air as Hooper would have this Court do. There were two issues in that case for which the court framed the damages question (without addressing whether or not any damages had been proved). First, for nonconforming beef products, the court followed *Bornstein* and *Woodbury* and adopted a version of the benefit of the bargain method. *United States ex rel. Humane Society v. Hallmark Meat Packing*,

---

[3] Undersigned counsel for Lockheed was also counsel for several of the defendants in the *Humane Society* case.

CROWELL
& MORING LLP
ATTORNEYS AT LAW

|   |   |
|---|---|
| 1 | 2013 WL 5753784, *9 (C.D. Cal. 2013). |
| 2 | • Also in that case, one of the defendants allegedly signed a false certification |
| 3 | that it was eligible place to enter into the contract. As in some other cases |
| 4 | in which the contractor was never eligible for the contract in the first place, |
| 5 | it supposedly had provided no benefit of any value to the government. If |
| 6 | that could be proved, then the damages would be the total contract price. |
| 7 | Id. at *12-13. *See also United States ex rel. Longhi v. Lithium Power* |
| 8 | *Techs. Inc.*, 575 F.3d 458, 462 (5th Cir. 2009) (false certification as to small |
| 9 | business status made defendant ineligible to receive research grant for |
| 10 | which government received no product and no benefit); *United States v.* |
| 11 | *Mackby*, 339 F.3d. 1013, 1018-19 (doctor was completely ineligible to |
| 12 | render services under Medicare; notwithstanding that patients may have |
| 13 | received the benefit of some service, the government itself received zero |
| 14 | benefit, resulting in damages in the amount of total received by the |
| 15 | defendant). Here, even if Lockheed submitted a false estimate, there is not |
| 16 | a single fact that could possibly suggest that Lockheed would have been |
| 17 | rendered ineligible to receive the contract, nor would a false estimate for a |
| 18 | change proposal have made it ineligible to receive the contract |
| 19 | modification. Indeed, the modifications were issued to Lockheed on a sole |
| 20 | source basis with no competition; i.e., Lockheed was the **only** eligible |
| 21 | contractor for the contract modifications. |
| 22 | • Hooper claims that Lockheed has the burden to prove that "any cost |
| 23 | overruns are due to requirements changes or upgrades ordered by the Air |
| 24 | Force as opposed to simply additional funding 'approved' by the Air Force |
| 25 | (which are part of the damages)." Hooper Trial Brief at 8:16-19. While |
| 26 | Judge Phillips put the burden on one of the defendants to show that the |
| 27 | processed cows were not mistreated, that decision does not support shifting |
| 28 | the burden to Lockheed to prove that the government was not harmed. |

Again, Hooper presumes that the government was harmed before there has been any proof of that. Furthermore, the Air Force's approval of additional funding is the very thing that makes the payment of those funds not a financial damage to the government.

In sum, Hooper has no authority for his instruction, which ignores the essential element of proof of damages. His reliance on cases in which the contractor was ineligible to receive the contract in the first place and provided no value whatsoever to the government have no applicability in this case.

### B. Lockheed's Damages Instruction Is Proper

If Hooper cannot prove that the government incurred financial harm as a result of any false estimate, then there simply are no damages. Lockheed's proposed instruction does not make it impossible to prove damages. It simply instructs the jury on the proper way to determine any damages by asking whether the government paid any money to Lockheed that it would not have paid had there been no false statement. That Hooper apparently cannot make that showing does not justify creating an instruction tailored to Hooper's lack of proof simply to enable him to recover damages when there are none.

In addressing the proper question of whether the government paid any money that it would not have paid had it known of a false statement, the jury should be instructed as to what, under the applicable regulation defining a cost-reimbursement contract, the government agreed to pay. Under the law, the government agreed to pay all allowable incurred costs to the extent prescribed in the contract, within the ceiling approved by the contracting officer.

This instruction defining what is a cost-reimbursement contract is necessary because Hooper's theory treats the contract as if it were a fixed price contract. That is, he erroneously and without any basis, believes that Lockheed's original contract estimate for $400,000,000 was some sort of promise to charge no more than that amount, no matter what occurred on the contract. That describes a fixed price

contract, which this was not. The Ninth Circuit identified the undisputed fact of this contract:

> The contract is a cost reimbursement plus award fee contract, under which the contractor is not paid a fixed price, but instead is reimbursed for its actual costs and receives periodic award fees based on its overall performance, including spending less money than estimated. The Air Force concluded that the contract would be a cost-reimbursement contract because "uncertainties inherent in the requirements render attempts to establish a fixed-price unrealistic."

*Hooper*, 688 F.3d. 1038. The Court should include this definition in its damages instruction, as Lockheed has proposed (along with the supporting reference to the Federal Acquisition Regulation 48 C.F.R. §§ 16.301-1, and 16.305).

Lockheed maintains and will prove that all of the costs it incurred on the contract were allowable incurred costs (a fact which Hooper admits). Hooper is free to try to prove that, notwithstanding that the costs were allowable and incurred on the contract, the government would not have paid Lockheed as much if it had known that there was some false estimate. The legal basis of Lockheed's instruction (i.e., the definition of the contract type), and the facts at trial will show that the contractor's estimate on a cost reimbursement contract has absolutely nothing to do with the government's decision to pay costs incurred on the contract that are within the contract ceiling. In other words, in the absence of some proof that a falsely low estimate caused the government to part with more money on the contract, there are no damages. That is precisely what the FCA means by "the amount of damages which the Government sustains because of the act." 31 U.S.C. § 3729(a).

//

CROWELL & MORING LLP ATTORNEYS AT LAW

If Hooper can somehow prove that the government would have paid Lockheed less money had it known of a false estimate, then the damages would be that differential. If he cannot, then there are no damages.

Lockheed's damages instruction is fully supported by the cases Lockheed cited with the instruction, repeated here for the Court's convenience.

- *United States ex rel. Davis v. District of Columbia*, 679 F.3d 832, 839 (D.C. Cir. 2012) ("[T]o establish damages, the government must show not only that the defendant's false claims caused the government to make payments that it would have otherwise withheld, but also that the performance the government received was worth less than what it believed it had purchased.") (quotation marks and citation omitted).

- *United States ex rel. Butler v. Hughes Helicopter Co.*, No. CV 89-5760 SVW (TX), 1993 WL 841192, at *16 (C.D. Cal. Aug. 25, 1993) *aff'd*, 71 F.3d 321 (9th Cir. 1995) ("Actual damages can be recovered only if a causal connection is shown between loss sustained by the government and the contractor's fraudulent conduct.

- *United States ex rel. Woodard v. Country View Care. Center, Inc.*, 797 F.2d 888, 893 (10th Cir. 1986) (damages under the FCA reflect 'the difference between what the government actually paid and the amount it would have paid in the absence of the fraudulent claim.'). False Claims Act damages are restitutive in nature; the government cannot recover if 'there is no showing that it would not ultimately have paid out the same amount of money' even in the absence of any false statement. *United States v. Woodbury*, 359 F.2d 370, 379 (9th Cir. 1966).")

- *United States v. Woodbury*, 359 F.2d 370, 379 (9th Cir. 1966): A government agency issued a loan for the construction of a housing project in exchange for a mortgage on the property. The court found

CROWELL & MORING LLP
ATTORNEYS AT LAW

that the contractor submitted false claims to the government when the contractor failed to disclose outstanding lienable claims and certain subcontractor arrangements, but the court held there were no damages: "[T]he measure of the government's damages would be the amount that [the government] paid out by reason of the false statements over and above what it would have paid if the claims had been truthful. . . . [The government] agreed to loan 90% [o]f FHA commitments up to $4,230,900. It was to get, as security for the loan, a mortgage on the completed project. This is what it loaned; this is what it got .... There is no showing that it would not ultimately have paid out the same amount of money, or that it would have received a more valuable security for the loan, or if so, by how much .... But no attempt was made to prove any such expenses."

- *United States ex rel. Butler v. Hughes Helicopter Co.*, No. CV 89-5760 SVW (TX), 1993 WL 841192, at *16 (C.D. Cal. Aug. 25, 1993) *aff'd,* 71 F.3d 321 (9th Cir. 1995): "Actual damages can be recovered only if a causal connection is shown between loss sustained by the government and the contractor's fraudulent conduct. *See United States ex rel. Woodard v. Country View Care. Center, Inc.*, 797 F.2d 888, 893 (10th Cir. 1986) (damages under the FCA reflect 'the difference between what the government actually paid and the amount it would have paid in the absence of the fraudulent claim.'). False Claims Act damages are restitutive in nature; the government cannot recover if 'there is no showing that it would not ultimately have paid out the same amount of money' even in the absence of any false statement. *United States v. Woodbury*, 359 F.2d 370, 379 (9th Cir. 1966). Relator failed to introduce any evidence whatsoever of any nexus between the alleged false or fraudulent statements made and particular claims for

payment made to the Army; the summary of invoices introduced did not illustrate any such connection, and Relator failed to introduce any other evidence on point. Accordingly, there was a total failure of proof on the issue of actual damages."

- *United States v. Foster Wheeler Corp.*, 316 F. Supp. 963, 973 (S.D.N.Y. 1970) *aff'd*, 447 F.2d 100 (2d Cir. 1971): *Forster* involved a fraudulently *overbid fixed-price* contract. The government negotiated with the defendant on a non-competitive basis to build and install boilers for the Navy. The government alleged that the defendant fraudulently inflated its costs and pricing during negotiations, which in turn inflated the contract price. The district court held that damages were limited to the amount fraudulently overcharged in the contract proposal. *Id*, *aff'd* 447 F.2d 100, 101-02 (holding that the trial court properly applied the *Woodbury* measure of damages).
- *United States v. Sci. Applications Int'l Corp.,* 626 F.3d 1257, 1278 (D.C. Cir. 2010). "In a case where the defendant agreed to provide goods or services to the government, the proper measure of damages is the difference between the value of the goods or services actually provided by the contactor and the value the good or services would have had to the government had they been delivered as promised."

In the *SAIC* case, the Court of Appeals reversed the district court on its damages jury instruction specifically because the court had instructed the jury not to account for the value of services that SAIC had conferred upon the government. 626 F.3d at 1278. "By requiring the jury to 'limit[]' its calculation of damages to the government's payments, the instruction compelled the jury to assess as damages the actual amount of payments the government made to SAIC. This automatic equation of the government's payments with its damages is mistaken." *Id*. The

court added: "Here, however, the damages instruction essentially required the jury to assume that SAIC's services had no value even in the face of possible evidence to the contrary." *Id*. at 1279. The D.C. Circuit's thorough analysis of how damages should be calculated supports Lockheed's instruction and shows just how off-base Hooper's proposed instruction is.

### III. New Authorities On FCA Damages

*United States ex rel. Rostholder v. Omnicare, Inc*., No. 12-2431, 2014 WL 661351 (4th Cir. Feb. 21, 2014) (finding no FCA liability). Notwithstanding that the defendant supplied the government with adulterated drugs and been paid for those drugs, the applicable regulations did not make the contractor ineligible to receive Medicare reimbursement.

*United States ex rel. Purcell v. MWI Corp*., CV 98-2088 (GK), 2014 WL 521524 (D.D.C. Feb. 10, 2014). "In order to assess the appropriate amount of damages, the jury was instructed [under *SAIC*] , that damages were 'the amount of money the government paid because of the false claims over and above what it would have paid had MWI not made the false claims,' and that it would need to 'set an award that puts the [G]oovernment in the same position as it would have been in if the defendant's claims had not been false.'"

Dated: March 11, 2014

Respectfully submitted,

CROWELL & MORING

By: */s/ Mark R. Troy*
Mark R. Troy (SBN 120418)
Jeffrey H. Rutherford
Mana E. Lombardo
Megan A. Weisgerber

Attorneys for Defendant
LOCKHEED MARTIN CORP.

LAACTIVE-601455874.1